UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------
In re:                                    )
                                          )        Chapter 15 Case No. 07-12383 (BRL)
BEAR STEARNS HIGH-GRADE                   )
STRUCTURED CREDIT STRATEGIES              )
MASTER FUND, LTD.                         )        Civil Case No. 07-8730 (RWS)
(IN PROVISIONAL LIQUIDATION)              )
                                          )
Debtor in a Foreign Proceeding and        )
        Appellant.                         )
                                          )
-----------------------------------------------------)
In re:                                    )        Chapter 15 Case No. 07-12384 (BRL)
                                          )
BEAR STEARNS HIGH-GRADE                   )
STRUCTURED CREDIT STRATEGIES              )
ENHANCED LEVERAGE MASTER                  )        Civil Case No. 07-8746 (RWS)
FUND, LTD.                                )
(IN PROVISIONAL LIQUIDATION)              )
                                          )
Debtor in a Foreign Proceeding and        )
        Appellant.                         )
                                          )
-----------------------------------------------------)
```

## ADDENDUM TO BRIEF OF THE AMICI CURIAE

Professor Jay L. Westbrook, *pro hac vice
pending*
University of Texas
School of Law
727 East Dean Keeton Street
Austin, Texas 78705-3224

Daniel M. Glosband (DG-1944)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109

Professor Kenneth N. Klee (KK-5910)
UCLA School of Law
405 Hilgard Avenue
Law Building 1242
Los Angeles, California 90095-1476

November 28, 2007

# ADDENDUM INDEX

| DOCUMENT | TAB NO. |
| --- | --- |
| Council Regulation (EC) No 1346/2000 of 29 May 2000 on Insolvency Proceedings, Off. J. L. 160/1 (2000) | 1 |
| Case C-341/04, *In re Eurofood IFSC Ltd.,* 2006 E.C.R. I-3813 | 2 |
| *SAS ISA Daisytek*, [CA] [regional court of appeal] Versailles, Sept. 4, 2003, 05038 | 3 |

# TAB NO. 1

30.6.2000    EN    Official Journal of the European Communities    L 160/1

# I

*(Acts whose publication is obligatory)*

## COUNCIL REGULATION (EC) No 1346/2000

### of 29 May 2000

### on insolvency proceedings

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Articles 61(c) and 67(1) thereof,

Having regard to the initiative of the Federal Republic of Germany and the Republic of Finland,

Having regard to the opinion of the European Parliament[1],

Having regard to the opinion of the Economic and Social Committee[2],

Whereas:

(1)    The European Union has set out the aim of establishing an area of freedom, security and justice.

(2)    The proper functioning of the internal market requires that cross-border insolvency proceedings should operate efficiently and effectively and this Regulation needs to be adopted in order to achieve this objective which comes within the scope of judicial cooperation in civil matters within the meaning of Article 65 of the Treaty.

(3)    The activities of undertakings have more and more cross-border effects and are therefore increasingly being regulated by Community law. While the insolvency of such undertakings also affects the proper functioning of the internal market, there is a need for a Community act requiring coordination of the measures to be taken regarding an insolvent debtor's assets.

(4)    It is necessary for the proper functioning of the internal market to avoid incentives for the parties to transfer assets or judicial proceedings from one Member State to another, seeking to obtain a more favourable legal position (forum shopping).

(5)    These objectives cannot be achieved to a sufficient degree at national level and action at Community level is therefore justified.

(6)    In accordance with the principle of proportionality this Regulation should be confined to provisions governing jurisdiction for opening insolvency proceedings and judgments which are delivered directly on the basis of the insolvency proceedings and are closely connected with such proceedings. In addition, this Regulation should contain provisions regarding the recognition of those judgments and the applicable law which also satisfy that principle.

(7)    Insolvency proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings are excluded from the scope of the 1968 Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters[3], as amended by the Conventions on Accession to this Convention[4].

(8)    In order to achieve the aim of improving the efficiency and effectiveness of insolvency proceedings having cross-border effects, it is necessary, and appropriate, that the provisions on jurisdiction, recognition and applicable law in this area should be contained in a Community law measure which is binding and directly applicable in Member States.

---

[1]  Opinion delivered on 2 March 2000 (not yet published in the Official Journal).
[2]  Opinion delivered on 26 January 2000 (not yet published in the Official Journal).

[3]  OJ L 299, 31.12.1972, p. 32.
[4]  OJ L 204, 2.8.1975, p. 28; OJ L 304, 30.10.1978, p. 1; OJ L 388, 31.12.1982, p. 1; OJ L 285, 3.10.1989, p. 1; OJ C 15, 15.1.1997, p. 1.

L 160/2    [EN]    Official Journal of the European Communities    30.6.2000

(9) This Regulation should apply to insolvency proceedings, whether the debtor is a natural person or a legal person, a trader or an individual. The insolvency proceedings to which this Regulation applies are listed in the Annexes. Insolvency proceedings concerning insurance undertakings, credit institutions, investment undertakings holding funds or securities for third parties and collective investment undertakings should be excluded from the scope of this Regulation. Such undertakings should not be covered by this Regulation since they are subject to special arrangements and, to some extent, the national supervisory authorities have extremely wide-ranging powers of intervention.

(10) Insolvency proceedings do not necessarily involve the intervention of a judicial authority; the expression 'court' in this Regulation should be given a broad meaning and include a person or body empowered by national law to open insolvency proceedings. In order for this Regulation to apply, proceedings (comprising acts and formalities set down in law) should not only have to comply with the provisions of this Regulation, but they should also be officially recognised and legally effective in the Member State in which the insolvency proceedings are opened and should be collective insolvency proceedings which entail the partial or total divestment of the debtor and the appointment of a liquidator.

(11) This Regulation acknowledges the fact that as a result of widely differing substantive laws it is not practical to introduce insolvency proceedings with universal scope in the entire Community. The application without exception of the law of the State of opening of proceedings would, against this background, frequently lead to difficulties. This applies, for example, to the widely differing laws on security interests to be found in the Community. Furthermore, the preferential rights enjoyed by some creditors in the insolvency proceedings are, in some cases, completely different. This Regulation should take account of this in two different ways. On the one hand, provision should be made for special rules on applicable law in the case of particularly significant rights and legal relationships (e.g. rights in rem and contracts of employment). On the other hand, national proceedings covering only assets situated in the State of opening should also be allowed alongside main insolvency proceedings with universal scope.

(12) This Regulation enables the main insolvency proceedings to be opened in the Member State where the debtor has the centre of his main interests. These proceedings have universal scope and aim at encompassing all the debtor's assets. To protect the diversity of interests, this Regulation permits secondary proceedings to be opened to run in parallel with the main proceedings. Secondary proceedings may be opened in the Member State where the

debtor has an establishment. The effects of secondary proceedings are limited to the assets located in that State. Mandatory rules of coordination with the main proceedings satisfy the need for unity in the Community.

(13) The 'centre of main interests' should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties.

(14) This Regulation applies only to proceedings where the centre of the debtor's main interests is located in the Community.

(15) The rules of jurisdiction set out in this Regulation establish only international jurisdiction, that is to say, they designate the Member State the courts of which may open insolvency proceedings. Territorial jurisdiction within that Member State must be established by the national law of the Member State concerned.

(16) The court having jurisdiction to open the main insolvency proceedings should be enabled to order provisional and protective measures from the time of the request to open proceedings. Preservation measures both prior to and after the commencement of the insolvency proceedings are very important to guarantee the effectiveness of the insolvency proceedings. In that connection this Regulation should afford different possibilities. On the one hand, the court competent for the main insolvency proceedings should be able also to order provisional protective measures covering assets situated in the territory of other Member States. On the other hand, a liquidator temporarily appointed prior to the opening of the main insolvency proceedings should be able, in the Member States in which an establishment belonging to the debtor is to be found, to apply for the preservation measures which are possible under the law of those States.

(17) Prior to the opening of the main insolvency proceedings, the right to request the opening of insolvency proceedings in the Member State where the debtor has an establishment should be limited to local creditors and creditors of the local establishment or to cases where main proceedings cannot be opened under the law of the Member State where the debtor has the centre of his main interest. The reason for this restriction is that cases where territorial insolvency proceedings are requested before the main insolvency proceedings are intended to be limited to what is absolutely necessary. If the main insolvency proceedings are opened, the territorial proceedings become secondary.

30.6.2000    EN    Official Journal of the European Communities    L 160/3

(18) Following the opening of the main insolvency proceedings, the right to request the opening of insolvency proceedings in a Member State where the debtor has an establishment is not restricted by this Regulation. The liquidator in the main proceedings or any other person empowered under the national law of that Member State may request the opening of secondary insolvency proceedings.

(19) Secondary insolvency proceedings may serve different purposes, besides the protection of local interests. Cases may arise where the estate of the debtor is too complex to administer as a unit or where differences in the legal systems concerned are so great that difficulties may arise from the extension of effects deriving from the law of the State of the opening to the other States where the assets are located. For this reason the liquidator in the main proceedings may request the opening of secondary proceedings when the efficient administration of the estate so requires.

(20) Main insolvency proceedings and secondary proceedings can, however, contribute to the effective realisation of the total assets only if all the concurrent proceedings pending are coordinated. The main condition here is that the various liquidators must cooperate closely, in particular by exchanging a sufficient amount of information. In order to ensure the dominant role of the main insolvency proceedings, the liquidator in such proceedings should be given several possibilities for intervening in secondary insolvency proceedings which are pending at the same time. For example, he should be able to propose a restructuring plan or composition or apply for realisation of the assets in the secondary insolvency proceedings to be suspended.

(21) Every creditor, who has his habitual residence, domicile or registered office in the Community, should have the right to lodge his claims in each of the insolvency proceedings pending in the Community relating to the debtor's assets. This should also apply to tax authorities and social insurance institutions. However, in order to ensure equal treatment of creditors, the distribution of proceeds must be coordinated. Every creditor should be able to keep what he has received in the course of insolvency proceedings but should be entitled only to participate in the distribution of total assets in other proceedings if creditors with the same standing have obtained the same proportion of their claims.

(22) This Regulation should provide for immediate recognition of judgments concerning the opening, conduct and closure of insolvency proceedings which come within its scope and of judgments handed down in direct connection with such insolvency proceedings. Automatic recognition should therefore mean that the effects attributed to the proceedings by the law of the State in which the proceedings were opened extend to all other Member States. Recognition of judgments delivered by the courts of the Member States should be based on the principle of mutual trust. To that end, grounds for non-recognition should be reduced to the minimum necessary. This is also the basis on which any dispute should be resolved where the courts of two Member States both claim competence to open the main insolvency proceedings. The decision of the first court to open proceedings should be recognised in the other Member States without those Member States having the power to scrutinise the court's decision.

(23) This Regulation should set out, for the matters covered by it, uniform rules on conflict of laws which replace, within their scope of application, national rules of private international law. Unless otherwise stated, the law of the Member State of the opening of the proceedings should be applicable (lex concursus). This rule on conflict of laws should be valid both for the main proceedings and for local proceedings; the lex concursus determines all the effects of the insolvency proceedings, both procedural and substantive, on the persons and legal relations concerned. It governs all the conditions for the opening, conduct and closure of the insolvency proceedings.

(24) Automatic recognition of insolvency proceedings to which the law of the opening State normally applies may interfere with the rules under which transactions are carried out in other Member States. To protect legitimate expectations and the certainty of transactions in Member States other than that in which proceedings are opened, provisions should be made for a number of exceptions to the general rule.

(25) There is a particular need for a special reference diverging from the law of the opening State in the case of rights in rem, since these are of considerable importance for the granting of credit. The basis, validity and extent of such a right in rem should therefore normally be determined according to the lex situs and not be affected by the opening of insolvency proceedings. The proprietor of the right in rem should therefore be able to continue to assert his right to segregation or separate settlement of the collateral security. Where assets are subject to rights in rem under the lex situs in one Member State but the main proceedings are being carried out in another Member State, the liquidator in the main proceedings should be able to request the opening of secondary proceedings in the jurisdiction where the rights in rem arise if the debtor has an establishment there. If a secondary proceeding is not opened, the surplus on sale of the asset covered by rights in rem must be paid to the liquidator in the main proceedings.

L 160/4    EN    Official Journal of the European Communities    30.6.2000

(26) If a set-off is not permitted under the law of the opening State, a creditor should nevertheless be entitled to the set-off if it is possible under the law applicable to the claim of the insolvent debtor. In this way, set-off will acquire a kind of guarantee function based on legal provisions on which the creditor concerned can rely at the time when the claim arises.

(27) There is also a need for special protection in the case of payment systems and financial markets. This applies for example to the position-closing agreements and netting agreements to be found in such systems as well as to the sale of securities and to the guarantees provided for such transactions as governed in particular by Directive 98/26/EC of the European Parliament and of the Council of 19 May 1998 on settlement finality in payment and securities settlement systems([1]). For such transactions, the only law which is material should thus be that applicable to the system or market concerned. This provision is intended to prevent the possibility of mechanisms for the payment and settlement of transactions provided for in the payment and set-off systems or on the regulated financial markets of the Member States being altered in the case of insolvency of a business partner. Directive 98/26/EC contains special provisions which should take precedence over the general rules in this Regulation.

(28) In order to protect employees and jobs, the effects of insolvency proceedings on the continuation or termination of employment and on the rights and obligations of all parties to such employment must be determined by the law applicable to the agreement in accordance with the general rules on conflict of law. Any other insolvency-law questions, such as whether the employees' claims are protected by preferential rights and what status such preferential rights may have, should be determined by the law of the opening State.

(29) For business considerations, the main content of the decision opening the proceedings should be published in the other Member States at the request of the liquidator. If there is an establishment in the Member State concerned, there may be a requirement that publication is compulsory. In neither case, however, should publication be a prior condition for recognition of the foreign proceedings.

(30) It may be the case that some of the persons concerned are not in fact aware that proceedings have been opened

and act in good faith in a way that conflicts with the new situation. In order to protect such persons who make a payment to the debtor because they are unaware that foreign proceedings have been opened when they should in fact have made the payment to the foreign liquidator, it should be provided that such a payment is to have a debt-discharging effect.

(31) This Regulation should include Annexes relating to the organisation of insolvency proceedings. As these Annexes relate exclusively to the legislation of Member States, there are specific and substantiated reasons for the Council to reserve the right to amend these Annexes in order to take account of any amendments to the domestic law of the Member States.

(32) The United Kingdom and Ireland, in accordance with Article 3 of the Protocol on the position of the United Kingdom and Ireland annexed to the Treaty on European Union and the Treaty establishing the European Community, have given notice of their wish to take part in the adoption and application of this Regulation.

(33) Denmark, in accordance with Articles 1 and 2 of the Protocol on the position of Denmark annexed to the Treaty on European Union and the Treaty establishing the European Community, is not participating in the adoption of this Regulation, and is therefore not bound by it nor subject to its application,

HAS ADOPTED THIS REGULATION:

CHAPTER I

**GENERAL PROVISIONS**

*Article 1*

**Scope**

1. This Regulation shall apply to collective insolvency proceedings which entail the partial or total divestment of a debtor and the appointment of a liquidator.

2. This Regulation shall not apply to insolvency proceedings concerning insurance undertakings, credit institutions, investment undertakings which provide services involving the holding of funds or securities for third parties, or to collective investment undertakings.

---

([1]) OJ L 166, 11.6.1998, p. 45.

30.6.2000    [EN]    Official Journal of the European Communities    L 160/5

## Article 2

### Definitions

For the purposes of this Regulation:

(a) 'insolvency proceedings' shall mean the collective proceedings referred to in Article 1(1). These proceedings are listed in Annex A;

(b) 'liquidator' shall mean any person or body whose function is to administer or liquidate assets of which the debtor has been divested or to supervise the administration of his affairs. Those persons and bodies are listed in Annex C;

(c) 'winding-up proceedings' shall mean insolvency proceedings within the meaning of point (a) involving realising the assets of the debtor, including where the proceedings have been closed by a composition or other measure terminating the insolvency, or closed by reason of the insufficiency of the assets. Those proceedings are listed in Annex B;

(d) 'court' shall mean the judicial body or any other competent body of a Member State empowered to open insolvency proceedings or to take decisions in the course of such proceedings;

(e) 'judgment' in relation to the opening of insolvency proceedings or the appointment of a liquidator shall include the decision of any court empowered to open such proceedings or to appoint a liquidator;

(f) 'the time of the opening of proceedings' shall mean the time at which the judgment opening proceedings becomes effective, whether it is a final judgment or not;

(g) 'the Member State in which assets are situated' shall mean, in the case of:

— tangible property, the Member State within the territory of which the property is situated,

— property and rights ownership of or entitlement to which must be entered in a public register, the Member State under the authority of which the register is kept,

— claims, the Member State within the territory of which the third party required to meet them has the centre of his main interests, as determined in Article 3(1);

(h) 'establishment' shall mean any place of operations where the debtor carries out a non-transitory economic activity with human means and goods.

## Article 3

### International jurisdiction

1.    The courts of the Member State within the territory of which the centre of a debtor's main interests is situated shall have jurisdiction to open insolvency proceedings. In the case of a company or legal person, the place of the registered office shall be presumed to be the centre of its main interests in the absence of proof to the contrary.

2.    Where the centre of a debtor's main interests is situated within the territory of a Member State, the courts of another Member State shall have jurisdiction to open insolvency proceedings against that debtor only if he possesses an establishment within the territory of that other Member State. The effects of those proceedings shall be restricted to the assets of the debtor situated in the territory of the latter Member State.

3.    Where insolvency proceedings have been opened under paragraph 1, any proceedings opened subsequently under paragraph 2 shall be secondary proceedings. These latter proceedings must be winding-up proceedings.

4.    Territorial insolvency proceedings referred to in paragraph 2 may be opened prior to the opening of main insolvency proceedings in accordance with paragraph 1 only:

(a) where insolvency proceedings under paragraph 1 cannot be opened because of the conditions laid down by the law of the Member State within the territory of which the centre of the debtor's main interests is situated; or

(b) where the opening of territorial insolvency proceedings is requested by a creditor who has his domicile, habitual residence or registered office in the Member State within the territory of which the establishment is situated, or whose claim arises from the operation of that establishment.

## Article 4

### Law applicable

1.    Save as otherwise provided in this Regulation, the law applicable to insolvency proceedings and their effects shall be that of the Member State within the territory of which such proceedings are opened, hereafter referred to as the 'State of the opening of proceedings'.

L 160/6    EN    Official Journal of the European Communities    30.6.2000

2.    The law of the State of the opening of proceedings shall determine the conditions for the opening of those proceedings, their conduct and their closure. It shall determine in particular:

(a) against which debtors insolvency proceedings may be brought on account of their capacity;

(b) the assets which form part of the estate and the treatment of assets acquired by or devolving on the debtor after the opening of the insolvency proceedings;

(c) the respective powers of the debtor and the liquidator;

(d) the conditions under which set-offs may be invoked;

(e) the effects of insolvency proceedings on current contracts to which the debtor is party;

(f) the effects of the insolvency proceedings on proceedings brought by individual creditors, with the exception of lawsuits pending;

(g) the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of insolvency proceedings;

(h) the rules governing the lodging, verification and admission of claims;

(i) the rules governing the distribution of proceeds from the realisation of assets, the ranking of claims and the rights of creditors who have obtained partial satisfaction after the opening of insolvency proceedings by virtue of a right in rem or through a set-off;

(j) the conditions for and the effects of closure of insolvency proceedings, in particular by composition;

(k) creditors' rights after the closure of insolvency proceedings;

(l) who is to bear the costs and expenses incurred in the insolvency proceedings;

(m) the rules relating to the voidness, voidability or unenforce-ability of legal acts detrimental to all the creditors.

## Article 5

### Third parties' rights in rem

1.    The opening of insolvency proceedings shall not affect the rights in rem of creditors or third parties in respect of tangible or intangible, moveable or immoveable assets — both specific assets and collections of indefinite assets as a whole which change from time to time — belonging to the debtor which are situated within the territory of another Member State at the time of the opening of proceedings.

2.    The rights referred to in paragraph 1 shall in particular mean:

(a) the right to dispose of assets or have them disposed of and to obtain satisfaction from the proceeds of or income from those assets, in particular by virtue of a lien or a mortgage;

(b) the exclusive right to have a claim met, in particular a right guaranteed by a lien in respect of the claim or by assignment of the claim by way of a guarantee;

(c) the right to demand the assets from, and/or to require restitution by, anyone having possession or use of them contrary to the wishes of the party so entitled;

(d) a right in rem to the beneficial use of assets.

3.    The right, recorded in a public register and enforceable against third parties, under which a right in rem within the meaning of paragraph 1 may be obtained, shall be considered a right in rem.

4.    Paragraph 1 shall not preclude actions for voidness, voidability or unenforceability as referred to in Article 4(2)(m).

## Article 6

### Set-off

1.    The opening of insolvency proceedings shall not affect the right of creditors to demand the set-off of their claims against the claims of the debtor, where such a set-off is permitted by the law applicable to the insolvent debtor's claim.

2.    Paragraph 1 shall not preclude actions for voidness, voidability or unenforceability as referred to in Article 4(2)(m).

## Article 7

### Reservation of title

1.    The opening of insolvency proceedings against the purchaser of an asset shall not affect the seller's rights based on a reservation of title where at the time of the opening of proceedings the asset is situated within the territory of a Member State other than the State of opening of proceedings.

2.    The opening of insolvency proceedings against the seller of an asset, after delivery of the asset, shall not constitute grounds for rescinding or terminating the sale and shall not prevent the purchaser from acquiring title where at the time of the opening of proceedings the asset sold is situated within the territory of a Member State other than the State of the opening of proceedings.

30.6.2000    EN    Official Journal of the European Communities    L 160/7

3.    Paragraphs 1 and 2 shall not preclude actions for voidness, voidability or unenforceability as referred to in Article 4(2)(m).

### Article 8

#### Contracts relating to immoveable property

The effects of insolvency proceedings on a contract conferring the right to acquire or make use of immoveable property shall be governed solely by the law of the Member State within the territory of which the immoveable property is situated.

### Article 9

#### Payment systems and financial markets

1.    Without prejudice to Article 5, the effects of insolvency proceedings on the rights and obligations of the parties to a payment or settlement system or to a financial market shall be governed solely by the law of the Member State applicable to that system or market.

2.    Paragraph 1 shall not preclude any action for voidness, voidability or unenforceability which may be taken to set aside payments or transactions under the law applicable to the relevant payment system or financial market.

### Article 10

#### Contracts of employment

The effects of insolvency proceedings on employment contracts and relationships shall be governed solely by the law of the Member State applicable to the contract of employment.

### Article 11

#### Effects on rights subject to registration

The effects of insolvency proceedings on the rights of the debtor in immoveable property, a ship or an aircraft subject to registration in a public register shall be determined by the law of the Member State under the authority of which the register is kept.

### Article 12

#### Community patents and trade marks

For the purposes of this Regulation, a Community patent, a Community trade mark or any other similar right established by Community law may be included only in the proceedings referred to in Article 3(1).

### Article 13

#### Detrimental acts

Article 4(2)(m) shall not apply where the person who benefited from an act detrimental to all the creditors provides proof that:

— the said act is subject to the law of a Member State other than that of the State of the opening of proceedings, and

— that law does not allow any means of challenging that act in the relevant case.

### Article 14

#### Protection of third-party purchasers

Where, by an act concluded after the opening of insolvency proceedings, the debtor disposes, for consideration, of:

— an immoveable asset, or

— a ship or an aircraft subject to registration in a public register, or

— securities whose existence presupposes registration in a register laid down by law,

the validity of that act shall be governed by the law of the State within the territory of which the immoveable asset is situated or under the authority of which the register is kept.

### Article 15

#### Effects of insolvency proceedings on lawsuits pending

The effects of insolvency proceedings on a lawsuit pending concerning an asset or a right of which the debtor has been divested shall be governed solely by the law of the Member State in which that lawsuit is pending.

### CHAPTER II

### RECOGNITION OF INSOLVENCY PROCEEDINGS

### Article 16

#### Principle

1.    Any judgment opening insolvency proceedings handed down by a court of a Member State which has jurisdiction pursuant to Article 3 shall be recognised in all the other Member States from the time that it becomes effective in the State of the opening of proceedings.

L 160/8 __EN__ Official Journal of the European Communities 30.6.2000

This rule shall also apply where, on account of his capacity, insolvency proceedings cannot be brought against the debtor in other Member States.

2.    Recognition of the proceedings referred to in Article 3(1) shall not preclude the opening of the proceedings referred to in Article 3(2) by a court in another Member State. The latter proceedings shall be secondary insolvency proceedings within the meaning of Chapter III.

### Article 17

#### Effects of recognition

1.    The judgment opening the proceedings referred to in Article 3(1) shall, with no further formalities, produce the same effects in any other Member State as under this law of the State of the opening of proceedings, unless this Regulation provides otherwise and as long as no proceedings referred to in Article 3(2) are opened in that other Member State.

2.    The effects of the proceedings referred to in Article 3(2) may not be challenged in other Member States. Any restriction of the creditors' rights, in particular a stay or discharge, shall produce effects vis-à-vis assets situated within the territory of another Member State only in the case of those creditors who have given their consent.

### Article 18

#### Powers of the liquidator

1.    The liquidator appointed by a court which has jurisdiction pursuant to Article 3(1) may exercise all the powers conferred on him by the law of the State of the opening of proceedings in another Member State, as long as no other insolvency proceedings have been opened there nor any preservation measure to the contrary has been taken there further to a request for the opening of insolvency proceedings in that State. He may in particular remove the debtor's assets from the territory of the Member State in which they are situated, subject to Articles 5 and 7.

2.    The liquidator appointed by a court which has jurisdiction pursuant to Article 3(2) may in any other Member State claim through the courts or out of court that moveable property was removed from the territory of the State of the opening of proceedings to the territory of that other Member State after the opening of the insolvency proceedings. He may also bring any action to set aside which is in the interests of the creditors.

3.    In exercising his powers, the liquidator shall comply with the law of the Member State within the territory of which he intends to take action, in particular with regard to procedures for the realisation of assets. Those powers may not include coercive measures or the right to rule on legal proceedings or disputes.

### Article 19

#### Proof of the liquidator's appointment

The liquidator's appointment shall be evidenced by a certified copy of the original decision appointing him or by any other certificate issued by the court which has jurisdiction.

A translation into the official language or one of the official languages of the Member State within the territory of which he intends to act may be required. No legalisation or other similar formality shall be required.

### Article 20

#### Return and imputation

1.    A creditor who, after the opening of the proceedings referred to in Article 3(1) obtains by any means, in particular through enforcement, total or partial satisfaction of his claim on the assets belonging to the debtor situated within the territory of another Member State, shall return what he has obtained to the liquidator, subject to Articles 5 and 7.

2.    In order to ensure equal treatment of creditors a creditor who has, in the course of insolvency proceedings, obtained a dividend on his claim shall share in distributions made in other proceedings only where creditors of the same ranking or category have, in those other proceedings, obtained an equivalent dividend.

### Article 21

#### Publication

1.    The liquidator may request that notice of the judgment opening insolvency proceedings and, where appropriate, the decision appointing him, be published in any other Member State in accordance with the publication procedures provided for in that State. Such publication shall also specify the liquidator appointed and whether the jurisdiction rule applied is that pursuant to Article 3(1) or Article 3(2).

30.6.2000     EN     Official Journal of the European Communities     L 160/9

2. However, any Member State within the territory of which the debtor has an establishment may require mandatory publication. In such cases, the liquidator or any authority empowered to that effect in the Member State where the proceedings referred to in Article 3(1) are opened shall take all necessary measures to ensure such publication.

## Article 22

### Registration in a public register

1. The liquidator may request that the judgment opening the proceedings referred to in Article 3(1) be registered in the land register, the trade register and any other public register kept in the other Member States.

2. However, any Member State may require mandatory registration. In such cases, the liquidator or any authority empowered to that effect in the Member State where the proceedings referred to in Article 3(1) have been opened shall take all necessary measures to ensure such registration.

## Article 23

### Costs

The costs of the publication and registration provided for in Articles 21 and 22 shall be regarded as costs and expenses incurred in the proceedings.

## Article 24

### Honouring of an obligation to a debtor

1. Where an obligation has been honoured in a Member State for the benefit of a debtor who is subject to insolvency proceedings opened in another Member State, when it should have been honoured for the benefit of the liquidator in those proceedings, the person honouring the obligation shall be deemed to have discharged it if he was unaware of the opening of proceedings.

2. Where such an obligation is honoured before the publication provided for in Article 21 has been effected, the person honouring the obligation shall be presumed, in the absence of proof to the contrary, to have been unaware of the opening of insolvency proceedings; where the obligation is honoured after such publication has been effected, the person honouring the obligation shall be presumed, in the absence of proof to the contrary, to have been aware of the opening of proceedings.

## Article 25

### Recognition and enforceability of other judgments

1. Judgments handed down by a court whose judgment concerning the opening of proceedings is recognised in

accordance with Article 16 and which concern the course and closure of insolvency proceedings, and compositions approved by that court shall also be recognised with no further formalities. Such judgments shall be enforced in accordance with Articles 31 to 51, with the exception of Article 34(2), of the Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by the Conventions of Accession to this Convention.

The first subparagraph shall also apply to judgments deriving directly from the insolvency proceedings and which are closely linked with them, even if they were handed down by another court.

The first subparagraph shall also apply to judgments relating to preservation measures taken after the request for the opening of insolvency proceedings.

2. The recognition and enforcement of judgments other than those referred to in paragraph 1 shall be governed by the Convention referred to in paragraph 1, provided that that Convention is applicable.

3. The Member States shall not be obliged to recognise or enforce a judgment referred to in paragraph 1 which might result in a limitation of personal freedom or postal secrecy.

## Article 26 [1]

### Public policy

Any Member State may refuse to recognise insolvency proceedings opened in another Member State or to enforce a judgment handed down in the context of such proceedings where the effects of such recognition or enforcement would be manifestly contrary to that State's public policy, in particular its fundamental principles or the constitutional rights and liberties of the individual.

## CHAPTER III

### SECONDARY INSOLVENCY PROCEEDINGS

## Article 27

### Opening of proceedings

The opening of the proceedings referred to in Article 3(1) by a court of a Member State and which is recognised in another Member State (main proceedings) shall permit the opening in that other Member State, a court of which has jurisdiction pursuant to Article 3(2), of secondary insolvency proceedings without the debtor's insolvency being examined in that other State. These latter proceedings must be among the proceedings listed in Annex B. Their effects shall be restricted to the assets of the debtor situated within the territory of that other Member State.

---

[1] Note the Declaration by Portugal concerning the application of Articles 26 and 37 (OJ C 183, 30.6.2000, p. 1).

Article 28

**Applicable law**

Save as otherwise provided in this Regulation, the law applicable to secondary proceedings shall be that of the Member State within the territory of which the secondary proceedings are opened.

Article 29

**Right to request the opening of proceedings**

The opening of secondary proceedings may be requested by:

(a) the liquidator in the main proceedings;

(b) any other person or authority empowered to request the opening of insolvency proceedings under the law of the Member State within the territory of which the opening of secondary proceedings is requested.

Article 30

**Advance payment of costs and expenses**

Where the law of the Member State in which the opening of secondary proceedings is requested requires that the debtor's assets be sufficient to cover in whole or in part the costs and expenses of the proceedings, the court may, when it receives such a request, require the applicant to make an advance payment of costs or to provide appropriate security.

Article 31

**Duty to cooperate and communicate information**

1.   Subject to the rules restricting the communication of information, the liquidator in the main proceedings and the liquidators in the secondary proceedings shall be duty bound to communicate information to each other. They shall immediately communicate any information which may be relevant to the other proceedings, in particular the progress made in lodging and verifying claims and all measures aimed at terminating the proceedings.

2.   Subject to the rules applicable to each of the proceedings, the liquidator in the main proceedings and the liquidators in the secondary proceedings shall be duty bound to cooperate with each other.

3.   The liquidator in the secondary proceedings shall give the liquidator in the main proceedings an early opportunity of submitting proposals on the liquidation or use of the assets in the secondary proceedings.

Article 32

**Exercise of creditors' rights**

1.   Any creditor may lodge his claim in the main proceedings and in any secondary proceedings.

2.   The liquidators in the main and any secondary proceedings shall lodge in other proceedings claims which have already been lodged in the proceedings for which they were appointed, provided that the interests of creditors in the latter proceedings are served thereby, subject to the right of creditors to oppose that or to withdraw the lodgement of their claims where the law applicable so provides.

3.   The liquidator in the main or secondary proceedings shall be empowered to participate in other proceedings on the same basis as a creditor, in particular by attending creditors' meetings.

Article 33

**Stay of liquidation**

1.   The court, which opened the secondary proceedings, shall stay the process of liquidation in whole or in part on receipt of a request from the liquidator in the main proceedings, provided that in that event it may require the liquidator in the main proceedings to take any suitable measure to guarantee the interests of the creditors in the secondary proceedings and of individual classes of creditors. Such a request from the liquidator may be rejected only if it is manifestly of no interest to the creditors in the main proceedings. Such a stay of the process of liquidation may be ordered for up to three months. It may be continued or renewed for similar periods.

2.   The court referred to in paragraph 1 shall terminate the stay of the process of liquidation:

— at the request of the liquidator in the main proceedings,

— of its own motion, at the request of a creditor or at the request of the liquidator in the secondary proceedings if that measure no longer appears justified, in particular, by the interests of creditors in the main proceedings or in the secondary proceedings.

30.6.2000     EN     Official Journal of the European Communities     L 160/11

## Article 34

### Measures ending secondary insolvency proceedings

1.    Where the law applicable to secondary proceedings allows for such proceedings to be closed without liquidation by a rescue plan, a composition or a comparable measure, the liquidator in the main proceedings shall be empowered to propose such a measure himself.

Closure of the secondary proceedings by a measure referred to in the first subparagraph shall not become final without the consent of the liquidator in the main proceedings; failing his agreement, however, it may become final if the financial interests of the creditors in the main proceedings are not affected by the measure proposed.

2.    Any restriction of creditors' rights arising from a measure referred to in paragraph 1 which is proposed in secondary proceedings, such as a stay of payment or discharge of debt, may not have effect in respect of the debtor's assets not covered by those proceedings without the consent of all the creditors having an interest.

3.    During a stay of the process of liquidation ordered pursuant to Article 33, only the liquidator in the main proceedings or the debtor, with the former's consent, may propose measures laid down in paragraph 1 of this Article in the secondary proceedings; no other proposal for such a measure shall be put to the vote or approved.

## Article 35

### Assets remaining in the secondary proceedings

If by the liquidation of assets in the secondary proceedings it is possible to meet all claims allowed under those proceedings, the liquidator appointed in those proceedings shall immediately transfer any assets remaining to the liquidator in the main proceedings.

## Article 36

### Subsequent opening of the main proceedings

Where the proceedings referred to in Article 3(1) are opened following the opening of the proceedings referred to in Article 3(2) in another Member State, Articles 31 to 35 shall apply to those opened first, in so far as the progress of those proceedings so permits.

## Article 37 [1]

### Conversion of earlier proceedings

The liquidator in the main proceedings may request that proceedings listed in Annex A previously opened in another Member State be converted into winding-up proceedings if this proves to be in the interests of the creditors in the main proceedings.

The court with jurisdiction under Article 3(2) shall order conversion into one of the proceedings listed in Annex B.

## Article 38

### Preservation measures

Where the court of a Member State which has jurisdiction pursuant to Article 3(1) appoints a temporary administrator in order to ensure the preservation of the debtor's assets, that temporary administrator shall be empowered to request any measures to secure and preserve any of the debtor's assets situated in another Member State, provided for under the law of that State, for the period between the request for the opening of insolvency proceedings and the judgment opening the proceedings.

## CHAPTER IV

### PROVISION OF INFORMATION FOR CREDITORS AND LODGEMENT OF THEIR CLAIMS

## Article 39

### Right to lodge claims

Any creditor who has his habitual residence, domicile or registered office in a Member State other than the State of the opening of proceedings, including the tax authorities and social security authorities of Member States, shall have the right to lodge claims in the insolvency proceedings in writing.

## Article 40

### Duty to inform creditors

1.    As soon as insolvency proceedings are opened in a Member State, the court of that State having jurisdiction or the liquidator appointed by it shall immediately inform known creditors who have their habitual residences, domiciles or registered offices in the other Member States.

---

[1] Note the Declaration by Portugal concerning the application of Articles 26 and 37 (OJ C 183, 30.6.2000, p. 1).

L 160/12    EN    Official Journal of the European Communities    30.6.2000

2.    That information, provided by an individual notice, shall in particular include time limits, the penalties laid down in regard to those time limits, the body or authority empowered to accept the lodgement of claims and the other measures laid down. Such notice shall also indicate whether creditors whose claims are preferential or secured in rem need lodge their claims.

### Article 41

### Content of the lodgement of a claim

A creditor shall send copies of supporting documents, if any, and shall indicate the nature of the claim, the date on which it arose and its amount, as well as whether he alleges preference, security in rem or a reservation of title in respect of the claim and what assets are covered by the guarantee he is invoking.

### Article 42

### Languages

1.    The information provided for in Article 40 shall be provided in the official language or one of the official languages of the State of the opening of proceedings. For that purpose a form shall be used bearing the heading 'Invitation to lodge a claim. Time limits to be observed' in all the official languages of the institutions of the European Union.

2.    Any creditor who has his habitual residence, domicile or registered office in a Member State other than the State of the opening of proceedings may lodge his claim in the official language or one of the official languages of that other State. In that event, however, the lodgement of his claim shall bear the heading 'Lodgement of claim' in the official language or one of the official languages of the State of the opening of proceedings. In addition, he may be required to provide a translation into the official language or one of the official languages of the State of the opening of proceedings.

### CHAPTER V

### TRANSITIONAL AND FINAL PROVISIONS

### Article 43

### Applicability in time

The provisions of this Regulation shall apply only to insolvency proceedings opened after its entry into force. Acts done by a debtor before the entry into force of this Regulation shall continue to be governed by the law which was applicable to them at the time they were done.

### Article 44

### Relationship to Conventions

1.    After its entry into force, this Regulation replaces, in respect of the matters referred to therein, in the relations between Member States, the Conventions concluded between two or more Member States, in particular:

(a) the Convention between Belgium and France on Jurisdiction and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Paris on 8 July 1899;

(b) the Convention between Belgium and Austria on Bankruptcy, Winding-up, Arrangements, Compositions and Suspension of Payments (with Additional Protocol of 13 June 1973), signed at Brussels on 16 July 1969;

(c) the Convention between Belgium and the Netherlands on Territorial Jurisdiction, Bankruptcy and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Brussels on 28 March 1925;

(d) the Treaty between Germany and Austria on Bankruptcy, Winding-up, Arrangements and Compositions, signed at Vienna on 25 May 1979;

(e) the Convention between France and Austria on Jurisdiction, Recognition and Enforcement of Judgments on Bankruptcy, signed at Vienna on 27 February 1979;

(f) the Convention between France and Italy on the Enforcement of Judgments in Civil and Commercial Matters, signed at Rome on 3 June 1930;

(g) the Convention between Italy and Austria on Bankruptcy, Winding-up, Arrangements and Compositions, signed at Rome on 12 July 1977;

(h) the Convention between the Kingdom of the Netherlands and the Federal Republic of Germany on the Mutual Recognition and Enforcement of Judgments and other Enforceable Instruments in Civil and Commercial Matters, signed at The Hague on 30 August 1962;

(i) the Convention between the United Kingdom and the Kingdom of Belgium providing for the Reciprocal Enforcement of Judgments in Civil and Commercial Matters, with Protocol, signed at Brussels on 2 May 1934;

(j) the Convention between Denmark, Finland, Norway, Sweden and Iceland on Bankruptcy, signed at Copenhagen on 7 November 1933;

(k) the European Convention on Certain International Aspects of Bankruptcy, signed at Istanbul on 5 June 1990.

2.    The Conventions referred to in paragraph 1 shall continue to have effect with regard to proceedings opened before the entry into force of this Regulation.

30.6.2000    EN    Official Journal of the European Communities    L 160/13

3.   This Regulation shall not apply:

(a) in any Member State, to the extent that it is irreconcilable with the obligations arising in relation to bankruptcy from a convention concluded by that State with one or more third countries before the entry into force of this Regulation;

(b) in the United Kingdom of Great Britain and Northern Ireland, to the extent that is irreconcilable with the obligations arising in relation to bankruptcy and the winding-up of insolvent companies from any arrangements with the Commonwealth existing at the time this Regulation enters into force.

*Article 45*

**Amendment of the Annexes**

The Council, acting by qualified majority on the initiative of one of its members or on a proposal from the Commission, may amend the Annexes.

*Article 46*

**Reports**

No later than 1 June 2012, and every five years thereafter, the Commission shall present to the European Parliament, the Council and the Economic and Social Committee a report on the application of this Regulation. The report shall be accompanied if need be by a proposal for adaptation of this Regulation.

*Article 47*

**Entry into force**

This Regulation shall enter into force on 31 May 2002.

This Regulation shall be binding in its entirety and directly applicable in the Member States in accordance with the Treaty establishing the European Community.

Done at Brussels, 29 May 2000.

*For the Council*

*The President*

A. COSTA

―――――

L 160/14    EN    Official Journal of the European Communities    30.6.2000

ANNEX A

**Insolvency proceedings referred to in Article 2(a)**

BELGIË—BELGIQUE

— Het faillissement/La faillite

— Het gerechtelijk akkoord/Le concordat judiciaire

— De collectieve schuldenregeling/Le règlement collectif de dettes

DEUTSCHLAND

— Das Konkursverfahren

— Das gerichtliche Vergleichsverfahren

— Das Gesamtvollstreckungsverfahren

— Das Insolvenzverfahren

ΕΛΛΑΣ

— Πτώχευση

— Η ειδική εκκαθάριση

— Η προσωρινή διαχείριση εταιρίας. Η διοίκηση και η διαχείριση των πιστωτών

— Η υπαγωγή επιχείρησης υπό επίτροπο με σκοπό τη σύναψη συμβιβασμού με τους πιστωτές

ESPAÑA

— Concurso de acreedores

— Quiebra

— Suspensión de pagos

FRANCE

— Liquidation judiciaire

— Redressement judiciaire avec nomination d'un administrateur

IRELAND

— Compulsory winding up by the court

— Bankruptcy

— The administration in bankruptcy of the estate of persons dying insolvent

— Winding-up in bankruptcy of partnerships

— Creditors' voluntary winding up (with confirmation of a Court)

— Arrangements under the control of the court which involve the vesting of all or part of the property of the debtor in the Official Assignee for realisation and distribution

— Company examinership

ITALIA

— Fallimento

— Concordato preventivo

— Liquidazione coatta amministrativa

— Amministrazione straordinaria

— Amministrazione controllata

LUXEMBOURG

— Faillite

— Gestion contrôlée

— Concordat préventif de faillite (par abandon d'actif)

— Régime spécial de liquidation du notariat

NEDERLAND

— Het faillissement

— De surséance van betaling

— De schuldsaneringsregeling natuurlijke personen

ÖSTERREICH

— Das Konkursverfahren

— Das Ausgleichsverfahren

PORTUGAL

— O processo de falência

— Os processos especiais de recuperação de empresa, ou seja:

    — A concordata

    — A reconstituição empresarial

    — A reestruturação financeira

    — A gestão controlada

30.6.2000    EN    Official Journal of the European Communities    L 160/15

SUOMI—FINLAND

— Konkurssi/konkurs

— Yrityssaneeraus/företagssanering

SVERIGE

— Konkurs

— Företagsrekonstruktion

UNITED KINGDOM

— Winding up by or subject to the supervision of the court

— Creditors' voluntary winding up (with confirmation by the court)

— Administration

— Voluntary arrangements under insolvency legislation

— Bankruptcy or sequestration

———

L 160/16    EN    Official Journal of the European Communities    30.6.2000

*ANNEX B*

**Winding up proceedings referred to in Article 2(c)**

BELGIË—BELGIQUE

— Het faillissement/La faillite

DEUTSCHLAND

— Das Konkursverfahren

— Das Gesamtvollstreckungsverfahren

— Das Insolvenzverfahren

ΕΛΛΑΣ

— Πτώχευση

— Η ειδική εκκαθάριση

ESPAÑA

— Concurso de acreedores

— Quiebra

— Suspensión de pagos basada en la insolvencia definitiva

FRANCE

— Liquidation judiciaire

IRELAND

— Compulsory winding up

— Bankruptcy

— The administration in bankruptcy of the estate of persons dying insolvent

— Winding-up in bankruptcy of partnerships

— Creditors' voluntary winding up (with confirmation of a court)

— Arrangements under the control of the court which involve the vesting of all or part of the property of the debtor in the Official Assignee for realisation and distribution

ITALIA

— Fallimento

— Liquidazione coatta amministrativa

LUXEMBOURG

— Faillite

— Régime spécial de liquidation du notariat

NEDERLAND

— Het faillissement

— De schuldsaneringsregeling natuurlijke personen

ÖSTERREICH

— Das Konkursverfahren

PORTUGAL

— O processo de falência

SUOMI—FINLAND

— Konkurssi/konkurs

SVERIGE

— Konkurs

UNITED KINGDOM

— Winding up by or subject to the supervision of the court

— Creditors' voluntary winding up (with confirmation by the court)

— Bankruptcy or sequestration

30.6.2000    EN    Official Journal of the European Communities    L 160/17

ANNEX C

**Liquidators referred to in Article 2(b)**

BELGIË—BELGIQUE

— De curator/Le curateur

— De commissaris inzake opschorting/Le commissaire au sursis

— De schuldbemiddelaar/Le médiateur de dettes

DEUTSCHLAND

— Konkursverwalter

— Vergleichsverwalter

— Sachwalter (nach der Vergleichsordnung)

— Verwalter

— Insolvenzverwalter

— Sachwalter (nach der Insolvenzordnung)

— Treuhänder

— Vorläufiger Insolvenzverwalter

ΕΛΛΑΣ

— Ο σύνδικο

— Ο προσωρινός διαχειριστής. Η διοικούσα επιτροπή των πιστωτών

— Ο ειδικός εκκαθαριστής

— Ο επίτροπος

ESPAÑA

— Depositario-administrador

— Interventor o Interventores

— Síndicos

— Comisario

FRANCE

— Représentant des créanciers

— Mandataire liquidateur

— Administrateur judiciaire

— Commissaire à l'exécution de plan

IRELAND

— Liquidator

— Official Assignee

— Trustee in bankruptcy

— Provisional Liquidator

— Examiner

ITALIA

— Curatore

— Commissario

LUXEMBOURG

— Le curateur

— Le commissaire

— Le liquidateur

— Le conseil de gérance de la section d'assainissement du notariat

NEDERLAND

— De curator in het faillissement

— De bewindvoerder in de surséance van betaling

— De bewindvoerder in de schuldsaneringsregeling natuurlijke personen

ÖSTERREICH

— Masseverwalter

— Ausgleichsverwalter

— Sachwalter

— Treuhänder

— Besondere Verwalter

— Vorläufiger Verwalter

— Konkursgericht

L 160/18    EN    Official Journal of the European Communities    30.6.2000

PORTUGAL

— Gestor judicial

— Liquidatário judicial

— Comissão de credores


SUOMI—FINLAND

— Pesänhoitaja/boförvaltare

— Selvittäjä/utredare

SVERIGE

— Förvaltare

— God man

— Rekonstruktör

UNITED KINGDOM

— Liquidator

— Supervisor of a voluntary arrangement

— Administrator

— Official Receiver

— Trustee

— Judicial factor

**TAB NO. 2**

Westlaw.

[2006] ECR I-3813                                                                 Page 1
EU: Case C-341/04
Celex No. 604J0341

**European Union Case Law**
COURT OF JUSTICE

Judgment of the Court (Grand Chamber) of 2 May 2006. Eurofood IFSC Ltd. Reference for a preliminary ruling: Supreme Court - Ireland. Judicial cooperation in civil matters - Regulation (EC) No 1346/2000 - Insolvency proceedings - Decision to open the proceedings - Centre of the debtor's main interests - Recognition of insolvency proceedings - Public policy. Case C-341/04.

European Court Reports 2006 page I-03813

© ELLIS Publications

© European Communities

<u>Text outline</u>

<u>Text</u>

<u>Index</u>

<u>Year (Dates)</u>

<u>References</u>

<u>Bibliographic Information</u>

Text

Judicial cooperation in civil matters

Regulation (EC) No 1346/2000

Insolvency proceedings

Decision to open the proceedings

Centre of the debtor's main interests

Recognition of insolvency proceedings

Public policy

**ISSUE 1**

In Case C-341/04,

REFERENCE for a preliminary ruling under Articles 68 EC and 234 EC from the Supreme Court (Ireland), made by decision of 27 July 2004, received at the Court on 9 August 2004, in the proceedings

Eurofood IFSC Ltd,

THE COURT (Grand Chamber),

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 2

composed of V. Skouris, President, P. Jann (Rapporteur), C.W.A. Timmermans, A. Rosas and J. Malenovsky, Presidents of Chambers, J.-P. Puissochet, R. Schintgen, N. Colneric, J. Kluka, U. Lohmus and E. Levits, Judges,

Advocate General: F.G. Jacobs,

Registrar: K. Sztranc, Administrator,

having regard to the written procedure and further to the hearing on 12 July 2005,

after considering the observations submitted on behalf of:

-   Mr Bondi, by G. Moss QC and B. Shipsey SC, J. Gleeson, G. Clohessy and E. Barrington, barristers-at-law, and by B. O'Neil, D. Smith and C. Mallon, solicitors,

-   the Bank of America NA, by M.M. Collins SC and L. McCann SC, and by B. Kennedy, barrister-at-law, and W. Day, solicitor,

-   Mr Farrell, Official Liquidator, by M.G. Collins SC and D. Murphy, barrister-at-law, and by T. O'Grady, solicitor,

-   the Director of Corporate Enforcement, by A. Keating, principal solicitor, and C. Costello, barrister-at-law,

-   the Certificate/Note holders, by D. Baxter, solicitor, D. McDonald SC, and J. Breslin, barrister-at-law,

-   Ireland, by D. O'Hagan, acting as Agent, assisted by D. Barniville, barrister-at-law,

-   the Czech Government, by T. Boek, acting as Agent,

-   the German Government, by W.-D. Plessing, acting as Agent,

-   the French Government, by G. de Bergues, JC. Niollet and A. Bodard-Hermant, acting as Agents,

-   the Italian Government, by I.M. Braguglia, acting as Agent, assisted by O. Fiumara and M. Massella Ducci Teri, acting as Agents,

-   the Hungarian Government, by P. Gottfried, acting as Agent,

-   the Austrian Government, by C. Pesendorfer, acting as Agent,

-   the Finnish Government, by T. Pynna and A. Guimaraes-Purokoski, acting as Agents,

-   the Commission of the European Communities, by C. O'Reilly and A.-M. Rouchaud-Joet, acting as Agents,

after hearing the Opinion of the Advocate General at the sitting on 27 September 2005,

gives the following

Judgment

**GROUNDS**

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813                                                                                                    Page 3
EU: Case C-341/04
Celex No. 604J0341

1. This reference for a preliminary ruling concerns the interpretation of Council Regulation (EC) No <u>1346/2000</u> of 29 May 2000 on insolvency proceedings (OJ 2000 L 160, p. 1) (the Regulation').

2. The reference was submitted in the context of insolvency proceedings concerning the Irish company Eurofood IFSC Ltd (Eurofood').

Legal context

Community legislation

3. According to Article 1(1) thereof, the Regulation applies to collective insolvency proceedings which entail the partial or total divestment of a debtor and the appointment of a liquidator'.

4. According to Article 2 of the Regulation, headed Definitions':

For the purposes of this Regulation:

(a) insolvency proceedings shall mean the collective proceedings referred to in Article 1(1). These proceedings are listed in Annex A;

(b) liquidator shall mean any person or body whose function is to administer or liquidate assets of which the debtor has been divested or to supervise the administration of his affairs. Those persons and bodies are listed in Annex C;

...

(e) judgment in relation to the opening of insolvency proceedings or the appointment of a liquidator shall include the decision of any court empowered to open such proceedings or to appoint a liquidator;

(f) the time of the opening of proceedings shall mean the time at which the judgment opening proceedings becomes effective, whether it is a final judgment or not;

...'

5. Annex A to the Regulation, concerning the insolvency proceedings referred to in Article 2(a) of the Regulation, mentions under Ireland the procedure of compulsory winding up by the Court'. By way of liquidators referred to in Article 2(b) of the Regulation, Annex C indicates, in relation to Ireland, the provisional liquidator'.

6. Concerning the determination of the court having jurisdiction, Article 3(1) and (2) of the Regulation provide:

The courts of the Member State within the territory of which the centre of a debtor's main interests is situated shall have jurisdiction to open insolvency proceedings. In the case of a company or legal person, the place of the registered office shall be presumed to be the centre of its main interests in the absence of proof to the contrary.

Where the centre of a debtor's main interests is situated within the territory of a Member State, the courts of another Member State shall have jurisdiction to open insolvency proceedings against that debtor only if he possesses an establishment within the territory of that other Member State. The effects of those proceedings shall be restricted to the assets of the debtor situated in the territory of the latter Member State'.

7. Concerning the determination of the law to be applied, Article 4(1) of the Regulation provides:

Copr. © West 2007 No Claim to Orig. Govt. Works

Save as otherwise provided in this Regulation, the law applicable to insolvency proceedings and their effects shall be that of the Member State within the territory of which such proceedings are opened...'.

8. Concerning the recognition of insolvency proceedings, Article 16(1) of the Regulation states:

Any judgment opening insolvency proceedings handed down by a court of a Member State which has jurisdiction pursuant to Article 3 shall be recognised in all the other Member States from the time that it becomes effective in the State of the opening of proceedings.'

9. Article 17(1) of the Regulation states:

The judgment opening the proceedings referred to in Article 3(1) shall, with no further formalities, produce the same effects in any other Member State as under this law of the State of the opening of proceedings...'.

10. However, according to Article 26 of the Regulation:

Any Member State may refuse to recognise insolvency proceedings opened in another Member State or to enforce a judgment handed down in the context of such proceedings where the effects of such recognition or enforcement would be manifestly contrary to that State's public policy, in particular its fundamental principles or the constitutional rights and liberties of the individual.'

11. According to Article 29(a) of the Regulation, the liquidator in the main proceedings may request the opening of secondary proceedings.

12. Article 38 of the Regulation provides that, where the court of a Member State which has jurisdiction pursuant to Article 3(1) appoints a temporary administrator, that temporary administrator shall be empowered to request any measures to secure and preserve any of the debtor's assets situated in another Member State, provided for under the law of that State, for the period between the request for the opening of insolvency proceedings and the judgment opening the proceedings'.

National legislation

13. Section 212 of the Companies Act 1963 (the Companies Act') confers on the High Court jurisdiction to wind up any company.

14. Section 215 of the Companies Act provides that an application to the court for the winding up of a company is to be by petition presented either by the company or by any creditor or creditors.

15. Section 220 of the Companies Act provides:

1. Where, before the presentation of a petition for the winding up of a company by the court, a resolution has been passed by the company for voluntary winding up, the winding up of the company shall be deemed to have commenced at the time of the passing of the resolution, and unless the court, on proof of fraud or mistake, thinks fit to direct otherwise, all proceedings taken in the voluntary winding up shall be deemed to have been validly taken.

2. In any other case, the winding up of a company by the court shall be deemed to commence at the time of the presentation of the petition for the winding up.'

16. Section 226(1) of the Companies Act provides that the court may appoint a provisional liquidator at any time

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

after the presentation of a winding-up petition. The appointment of the liquidator, pursuant to section 225, is otherwise made at the time the winding-up order is made. Pursuant to section 229(1), a provisional liquidator, once appointed, is obliged to take into his custody or under his control all the property and things in action to which the company is or appears to be entitled'.

Background and questions referred for a preliminary ruling

17. Eurofood was registered in Ireland in 1997 as a company limited by shares' with its registered office in the International Financial Services Centre in Dublin. It is a wholly owned subsidiary of Parmalat SpA, a company incorporated in Italy, whose principal objective was the provision of financing facilities for companies in the Parmalat group.

18. On 24 December 2003, in accordance with Decree-Law No 347 of 23 December 2003 concerning urgent measures for the industrial restructuring of large insolvent undertakings (GURI No 298 of 24 December 2003, p. 4), Parmalat SpA was admitted to extraordinary administration proceedings by the Italian Ministry of Production Activities, who appointed Mr Bondi as the extraordinary administrator of that undertaking.

19. On 27 January 2004, the Bank of America NA applied to the High Court (Ireland) for compulsory winding up proceedings to be commenced against Eurofood and for the nomination of a provisional liquidator. That application was based on the contention that that company was insolvent.

20. On the same day the High Court, on the strength of that application, appointed Mr Farrell as the provisional liquidator, with powers to take possession of all the company's assets, manage its affairs, open a bank account in its name, and instruct lawyers on its behalf.

21. On 9 February 2004, the Italian Minister for Production Activities admitted Eurofoods to the extraordinary administration procedure and appointed Mr Bondi as the extraordinary administrator.

22. On 10 February 2004, an application was lodged before the Tribunale Civile e Penale di Parma (District Court, Parma) (Italy) for a declaration that Eurofoods was insolvent. The hearing was fixed for 17 February 2004, Mr Farrell being informed of that date on 13 February. On 20 February 2004, the District Court in Parma, taking the view that Eurofood's centre of main interests was in Italy, held that it had international jurisdiction to determine whether Eurofoods was in a state of insolvency.

23. By 23 March 2004 the High Court decided that, according to Irish law, the insolvency proceedings in respect of Eurofood had been opened in Ireland on the date on which the application was submitted by the Bank of America NA, namely 27 January 2004. Taking the view that the centre of main interests of Eurofood was in Ireland, it held that the proceedings opened in Ireland were the main proceedings. It also held that the circumstances in which the proceedings were conducted before the District Court in Parma were such as to justify, pursuant to Article 26 of the Regulation, the refusal of the Irish courts to recognise the decision of that court. Finding that Eurofood was insolvent, the High Court made an order for winding up and appointed Mr Farrell as the liquidator.

24. Mr Bondi having appealed against that judgment, the Supreme Court considered it necessary, before ruling on the dispute before it, to stay the proceedings and to refer the following questions to the Court of Justice for a preliminary ruling:

(1) Where a petition is presented to a court of competent jurisdiction in Ireland for the winding up of an insolvent company and that court makes an order, pending the making of an order for winding up, appointing a

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 6

provisional liquidator with powers to take possession of the assets of the company, manage its affairs, open a bank account and appoint a solicitor all with the effect in law of depriving the directors of the company of power to act, does that order combined with the presentation of the petition constitute a judgment opening... insolvency proceedings for the purposes of Article 16, interpreted in the light of Articles 1 and 2, of Council Regulation (EC) No 1346/2000?

(2) If the answer to Question 1 is in the negative, does the presentation, in Ireland, of a petition to the High Court for the compulsory winding up of a company by the court constitute the opening of insolvency proceedings for the purposes of that regulation by virtue of the Irish legal provision (section 220(2) of the Companies Act, 1963) deeming the winding up of the company to commence at the date of the presentation of the petition?

(3) Does Article 3 of the said regulation, in combination with Article 16, have the effect that a court in a Member State other than that in which the registered office of the company is situated and other than where the company conducts the administration of its interests on a regular basis in a manner ascertainable by third parties, but where insolvency proceedings are first opened has jurisdiction to open main insolvency proceedings?

(4) Where,

(a) the registered offices of a parent company and its subsidiary are in two different Member States,

(b) the subsidiary conducts the administration of its interests on a regular basis in a manner ascertainable by third parties and in complete and regular respect for its own corporate identity in the Member State where its registered office is situated and

(c) the parent company is in a position, by virtue of its shareholding and power to appoint directors, to control and does in fact control the policy of the subsidiary, in determining the centre of main interests, are the governing factors those referred to at (b) above or on the other hand those referred to at (c) above?

(5) Where it is manifestly contrary to the public policy of a Member State to permit a judicial or administrative decision to have legal effect in relation [to] persons or bodies whose right to fair procedures and a fair hearing has not been respected in reaching such a decision, is that Member State bound, by virtue of Article 17 of the said regulation, to give recognition to a decision of the courts of another Member State purporting to open insolvency proceedings in respect of a company, in a situation where the court of the first Member State is satisfied that the decision in question has been made in disregard of those principles and, in particular, where the applicant in the second Member State has refused, in spite of requests and contrary to the order of the court of the second Member State, to provide the provisional liquidator of the company, duly appointed in accordance with the law of the first Member State, with any copy of the essential papers grounding the application?'

25. By order of the President of the Court of Justice of 15 September 2004, the application by the Supreme Court that the accelerated procedure provided for in the first subparagraph of Article 104a of the Rules of Procedure be applied to the present case was rejected.

The questions

The fourth question

26. By its fourth question, which should be considered first since it concerns, in general, the system which the Regulation establishes for determining the competence of the courts of the Member States, the national court asks what the determining factor is for identifying the centre of main interests of a subsidiary company, where it

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 7

and its parent have their respective registered offices in two different Member States.

27. The referring court asks how much relative weight should be given as between, on the one hand, the fact that the subsidiary regularly administers its interests, in a manner ascertainable by third parties and in respect for its own corporate identity, in the Member State where its registered office is situated and, on the other hand, the fact that the parent company is in a position, by virtue of its shareholding and power to appoint directors, to control the policy of the subsidiary.

28. Article 3 of the Regulation makes provision for two types of proceedings. The insolvency proceedings opened, in accordance with Article 3(1), by the competent court of the Member State within whose territory the centre of a debtor's main interests is situated, described as the main proceedings', produce universal effects in that they apply to the assets of the debtor situated in all the Member States in which the regulation applies. Although, subsequently, proceedings under Article 3(2) may be opened by the competent court of the Member State where the debtor has an establishment, those proceedings, described as secondary proceedings', are restricted to the assets of the debtor situated in the territory of the latter State.

29. Article 3(1) of the Regulation provides that, in the case of a company, the place of the registered office shall be presumed to be the centre of its main interests in the absence of proof to the contrary.

30. It follows that, in the system established by the Regulation for determining the competence of the courts of the Member States, each debtor constituting a distinct legal entity is subject to its own court jurisdiction.

31. The concept of the centre of main interests is peculiar to the Regulation. Therefore, it has an autonomous meaning and must therefore be interpreted in a uniform way, independently of national legislation.

32. The scope of that concept is highlighted by the 13th recital of the Regulation, which states that the centre of main interests' should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties'.

33. That definition shows that the centre of main interests must be identified by reference to criteria that are both objective and ascertainable by third parties. That objectivity and that possibility of ascertainment by third parties are necessary in order to ensure legal certainty and foreseeability concerning the determination of the court with jurisdiction to open main insolvency proceedings. That legal certainty and that foreseeability are all the more important in that, in accordance with Article 4(1) of the Regulation, determination of the court wi th jurisdiction entails determination of the law which is to apply.

34. It follows that, in determining the centre of the main interests of a debtor company, the simple presumption laid down by the Community legislature in favour of the registered office of that company can be rebutted only if factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which locating it at that registered office is deemed to reflect.

35. That could be so in particular in the case of a letterbox' company not carrying out any business in the territory of the Member State in which its registered office is situated.

36. By contrast, where a company carries on its business in the territory of the Member State where its registered office is situated, the mere fact that its economic choices are or can be controlled by a parent company in another Member State is not enough to rebut the presumption laid down by the Regulation.

37. In those circumstances, the answer to the fourth question must be that, where a debtor is a subsidiary com-

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

pany whose registered office and that of its parent company are situated in two different Member States, the presumption laid down in the second sentence of Article 3(1) of the Regulation, whereby the centre of main interests of that subsidiary is situated in the Member State where its registered office is situated, can be rebutted only if factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which locating it at that registered office is deemed to reflect. That could be so in particular in the case of a company not carrying out any business in the territory of the Member State in which its registered office is situated. By contrast, where a company carries on its business in the territory of the Member State where its registered office is situated, the mere fact that its economic choices are or can be controlled by a parent company in another Member State is not enough to rebut the presumption laid down by the Regulation.

The third question

38. By its third question, which should be examined second, since it concerns the recognition system established by the Regulation in general, the referring court essentially asks whether, by virtue of Articles 3 and 16 of the Regulation, a court of a Member State, other than the one in which the registered office of the undertaking is situated, and other than the one in which that undertaking conducts the administration of its interests on a regular basis in a manner ascertainable by third parties, but where insolvency proceedings are first opened, must be regarded as having jurisdiction to open the main insolvency proceedings. The referring court is thus essentially asking whether the jurisdiction assumed by a court of a Member State to open main insolvency proceedings may be reviewed by a court of another Member State in which recognition has been applied for.

39. As is shown by the 22nd recital of the Regulation, the rule of priority laid down in Article 16(1) of the Regulation, which provides that insolvency proceedings opened in one Member State are to be recognised in all the Member States from the time that they produce their effects in the State of the opening of proceedings, is based on the principle of mutual trust.

40. It is that mutual trust which has enabled a compulsory system of jurisdiction to be established, which all the courts within the purview of the Convention are required to respect, and as a corollary the waiver by those States of the right to apply their internal rules on recognition and enforcement of foreign judgments in favour of a simplified mechanism for the recognition and enforcement of decisions handed down in the context of insolvency proceedings [see by analogy, in relation to the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial matters (OJ 1978 L 304, p. 36; the Brussels Convention'), Case C-116/02 Gasser [2003] ECR I-14693, paragraph 72;

Case C-159/02 Turner [2004] ECR I3565, paragraph 24].

41. It is inherent in that principle of mutual trust that the court of a Member State hearing an application for the opening of main insolvency proceedings check that it has jurisdiction having regard to Article 3(1) of the Regulation, i.e. examine whether the centre of the debtor's main interests is situated in that Member State. In that regard, it should be emphasised that such an examination must take place in such a way as to comply with the essential procedural guarantees required for a fair legal process (see paragraph 66 of this judgment).

42. In return, as the 22nd recital of the Regulation makes clear, the principle of mutual trust requires that the courts of the other Member States recognise the decision opening main insolvency proceedings, without being able to review the assessment made by the first court as to its jurisdiction.

43. If an interested party, taking the view that the centre of the debtor's main interests is situated in a Member

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 9

State other than that in which the main insolvency proceedings were opened, wishes to challenge the jurisdiction assumed by the court which opened those proceedings, it may use, before the courts of the Member State in which they were opened, the remedies prescribed by the national law of that Member State against the opening decision.

44. The answer to the third question must therefore be that, on a proper interpretation of the first subparagraph of Article 16(1) of the Regulation, the main insolvency proceedings opened by a court of a Member State must be recognised by the courts of the other Member States, without the latter being able to review the jurisdiction of the court of the opening State.

The first question

45. By its first question, the referring court essentially asks whether the decision whereby a court of a Member State, presented with a petition for the liquidation of an insolvent company, appoints, before ordering that liquidation, a provisional liquidator with powers whose legal effect is to deprive the company's directors of the power to act, constitutes a decision opening insolvency proceedings for the purposes of the first subparagraph of Article 16(1) of the Regulation.

46. The wording of Article 1(1) of the Regulation shows that the insolvency proceedings to which it applies must have four characteristics. They must be collective proceedings, based on the debtor's insolvency, which entail at least partial divestment of that debtor and prompt the appointment of a liquidator.

47. Those forms of proceedings are listed in Annex A to the Regulation, and the list of liquidators appears in Annex C.

48. The Regulation is designed not to establish uniform proceedings on insolvency, but, as its second recital states, to ensure that cross-border insolvency proceedings... operate efficiently and effectively'. To that end, it lays down rules which, as its third recital indicates, are aimed at securing coordination of the measures to be taken regarding an insolvent debtor's assets'.

49. By requiring that any judgment opening insolvency proceedings handed down by a court of a Member State which has jurisdiction pursuant to Article 3 be recognised in all the other Member States from the time that it becomes effective in the State of the opening of proceedings, the first subparagraph of Article 16(1) of the Regulation lays down a rule of priority, based on a chronological criterion, in favour of the opening decision which was handed down first. As the 22nd recital of the Regulation explains, [t]he decision of the first court to open proceedings should be recognised in the other Member States without those Member States having the power to scrutinise the court's decision'.

50. However, the Regulation does not define sufficiently precisely what is meant by a decision to open insolvency proceedings'.

51. The conditions and formalities required for opening insolvency proceedings are a matter for national law, and vary considerably from one Member State to another. In some Member States, the proceedings are opened very shortly after the submission of the application, the necessary verifications being carried out later. In other Member States, certain essential findings, which may be quite time-consuming, must be made before proceedings are opened. Under the national law of certain Member States, the proceedings may be opened provisionally' for several months.

52. As the Commission of the European Communities has argued, it is necessary, in order to ensure the effect-

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

iveness of the system established by the Regulation, that the recognition principle laid down in the first subparagraph of Article 16(1) of the Regulation, be capable of being applied as soon as possible in the course of the proceedings. The mechanism providing that only one main set of proceedings may be opened, producing its effects in all the Member States in which the Regulation applies, could be seriously disrupted if the courts of those States, hearing applications based on a debtor's insolvency at the same time, could claim concurrent jurisdiction over an extended period.

53. It is in relation to that objective seeking to ensure the effectiveness of the system established by the Regulation that the concept of decision to open insolvency proceedings' must be interpreted.

54. In those circumstances, a decision to open insolvency proceedings' for the purposes of the Regulation must be regarded as including not only a decision which is formally described as an opening decision by the legislation of the Member State of the court that handed it down, but also a decision handed down following an application, based on the debtor's insolvency, seeking the opening of proceedings referred to in Annex A to the Regulation, where that decision involves divestment of the debtor and the appointment of a liquidator referred to in Annex C to the Regulation. Such divestment involves the debtor losing the powers of management which he has over his assets. In such a case, the two characteristic consequences of insolvency proceedings, namely the appointment of a liquidator referred to in Annex C and the divestment of the debtor, have taken effect, and thus all the elements constituting the definition of such proceedings, given in Article 1(1) of the Regulation, are present.

55. Contrary to the arguments of Mr Bondi and the Italian Government, that interpretation cannot be invalidated by the fact that the liquidator referred to in Annex C to the Regulation may be a provisionally-appointed liquidator.

56. Both Mr Bondi and the Italian Government acknowledge that, in the main proceedings, the provisional liquidator' appointed by the High Court, by decision of 27 January 2004, appears amongst the liquidators mentioned in Annex C to the Regulation in relation to Ireland. They argue, however, that this is a case of a provisional liquidator, in respect of whom the Regulation contains a specific provision. They note that Article 38 of the Regulation empowers the provisional liquidator, defined in the 16th recital as the liquidator appointed prior to the opening of the main insolvency proceedings', to apply for preservation measures on the assets of the debtor situated in another Member State for the period between the request for the opening of insolvency proceedings and the judgment opening the proceedings. Mr Bondi and the Italian Government infer from that that the appointment of a provisional liquidator cannot open the main insolvency proceedings.

57. In that respect, it should be noted that Article 38 of the Regulation must be read in combination with Article 29, according to which the liquidator in the main proceedings is entitled to request the opening of secondary proceedings in another Member State. That Article 38 thus concerns the situation in which the competent court of a Member State has had main insolvency proceedings brought before it and has appointed a person or body to watch over the debtor's assets on a provisional basis, but has not yet ordered that debtor be divested or appointed a liquidator referred to in Annex C to the Regulation. In that case, the person or body in question, though not empowered to initiate secondary insolvency proceedings in another Member State, may request that preservation measures be taken over the assets of the debtor situated in that Member State. That is, however, not the case in the main proceedings here, where the High Court has appointed a provisional liquidator referred to in Annex C to the Regulation and ordered that the debtor be divested.

58. In view of the above considerations, the answer to the first question must be that, on a proper interpretation of the first subparagraph of Article 16(1) of the Regulation, a decision to open insolvency proceedings for the purposes of that provision is a decision handed down by a court of a Member State to which application for such

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

a decision has been made, based on the debtor's insolvency and seeking the opening of proceedings referred to in Annex A to the Regulation, where that decision involves the divestment of the debtor and the appointment of a liquidator referred to in Annex C to the Regulation. Such divestment implies that the debtor loses the powers of management that he has over his assets.

The second question

59. In the light of the answer given to the first question, there is no need to reply to the second question.

The fifth question

60. By its fifth question, the referring court essentially asks whether a Member State is required, under Article 17 of the Regulation, to recognise insolvency proceedings opened in another Member State where the decision op ening those proceedings was handed down in disregard of procedural rules guaranteed in the first Member State by the requirements of its public policy.

61. Whilst the 22nd recital of the Regulation infers from the principle of mutual trust that grounds for non-recognition should be reduced to the minimum necessary', Article 26 provides that a Member State may refuse to recognise insolvency proceedings opened in another Member State where the effects of such recognition would be manifestly contrary to that State's public policy, in particular its fundamental principles or the constitutional rights and liberties of the individual.

62. In the context of the Brussels Convention, the Court of Justice has held that, since it constitutes an obstacle to the achievement of one of the fundamental aims of that Convention, namely to facilitate the free movement of judgments, recourse to the public policy clause contained in Article 27, point 1, of the Convention is reserved for exceptional cases (Case C-7/98 Krombach [2000] ECR I1935, paragraphs 19 and 21).

63. Considering itself competent to review the limits within which the courts of a Contracting State may have recourse to that concept for the purpose of refusing recognition to a judgment emanating from a court in another Contracting State, the Court of Justice had held, in the context of the Brussels Convention, that recourse to that clause can be envisaged only where recognition or enforcement of the judgment delivered in another Contracting State would be at variance to an unacceptable degree with the legal order of the State in which enforcement is sought inasmuch as it infringes a fundamental principle. The infringement would have to constitute a manifest breach of a rule of law regarded as essential in the legal order of the State in which enforcement is sought or of a right recognised as being fundamental within that legal order (Krombach, paragraphs 23 and 37).

64. That case-law is transposable to the interpretation of Article 26 of the Regulation.

65. In the procedural area, the Court of Justice has expressly recog nised the general principle of Community law that everyone is entitled to a fair legal process (Case C-185/95 P Baustahlgewebe v Commission [1998] ECR I-8417, paragraphs 20 and 21;

Joined Cases C-174/98 P and C-189/98 P Netherlands and Van der Wal v Commission [2000] ECR I-1, paragraph 17; and Krombach, paragraph 26). That principle is inspired by the fundamental rights which form an integral part of the general principles of Community law which the Court of Justice enforces, drawing inspiration from the constitutional traditions common to the Member States and from the guidelines supplied, in particular, by the European Convention for the Protection of Human Rights and Fundamental Freedoms, signed in Rome on 4 November 1950.

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 12

66. Concerning more particularly the right to be notified of procedural documents and, more generally, the right to be heard, referred to in the referring court's fifth question, these rights occupy an eminent position in the organisation and conduct of a fair legal process. In the context of insolvency proceedings, the right of creditors or their representatives to participate in accordance with the equality of arms principle is of particular importance. Though the specific detailed rules concerning the right to be heard may vary according to the urgency for a ruling to be given, any restriction on the exercise of that right must be duly justified and surrounded by procedural guarantees ensuring that persons concerned by such proceedings actually have the opportunity to challenge the measures adopted in urgency.

67. In the light of those considerations, the answer to the fifth question must be that, on a proper interpretation of Article 26 of the Regulation, a Member State may refuse to recognise insolvency proceedings opened in another Member State where the decision to open the proceedings was taken in flagrant breach of the fundamental right to be heard, which a person concerned by such proceedings enjoys.

68. Should occasion arise, it will be for the referring court to establish whether, in the main proceedings, that has been the case with the conduct of the proceedings before the Tribunale civile e penale di Parma. In that respect, it should be observed that the referring court cannot confine itself to transposing its own conception of the requirement for an oral hearing and of how fundamental that requirement is in its legal order, but must assess, having regard to the whole of the circumstances, whether or not the provisional liquidator appointed by the High Court was given sufficient opportunity to be heard.

Costs

69. Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

**RULING**

On those grounds, the Court (Grand Chamber) hereby rules:

1. Where a debtor is a subsidiary company whose registered office and that of its parent company are situated in two different Member States, the presumption laid down in the second sentence of Article 3(1) of Council Regulation (EC) No 1346/2000 of 29 May 2000 on insolvency proceedings, whereby the centre of main interests of that subsidiary is situated in the Member State where its registered office is situated, can be rebutted only if factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which location at that registered office is deemed to reflect. That could be so in particular in the case of a company not carrying out any business in the territory of the Member State in which its registered office is situated. By contrast, where a company carries on its business in the territory of the Member State where its registered office is situated, the mere fact that its economic choices are or can be controlled by a parent company in another Member State is not enough to rebut the presumption laid down by that Regulation.

2. On a proper interpretation of the first subparagraph of Article 16(1) of Regulation No 1346/2000, the main insolvency proceedings opened by a court of a Member State must be recognised by the courts of the other Member States, without the latter being able to review the jurisdiction of the court of the opening State.

3. On a proper interpretation of the first subparagraph of Article 16(1) of the Regulation, a decision to open insolvency proceedings for the purposes of that provision is a decision handed down by a court of a Member State

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 13

to which application for such a decision has been made, based on the debtor's insolvency and seeking the opening of proceedings referred to in Annex A to the Regulation, where that decision involves the divestment of the debtor and the appointment of a liquidator referred to in Annex C to the Regulation. Such divestment implies that the debtor loses the powers of management that he has over his assets.

4. On a proper interpretation of Article 26 of the Regulation, a Member State may refuse to recognise insolvency proceedings opened in another Member State where the decision to open the proceedings was taken in flagrant breach of the fundamental right to be heard, which a person concerned by such proceedings enjoys.

Index

**Subject**

COJC

Year (Dates)

**Date of judgment**

2006/05/02

**Date lodged**

2004/08/09

**Date overview**

of document: 02/05/2006

of application: 09/08/2004

References

**Celex number**
604J0341

**Case citations**

Regulation No 1346/2000 [300R1346]-A01P1 N 46

Regulation No 1346/2000 [300R1346]-A03P1 N 26 - 37 41

Regulation No 1346/2000 [300R1346]-A03P2 N 28

Regulation No 1346/2000 [300R1346]-A16P1 N 38 - 58

Regulation No 1346/2000 [300R1346]-A16P1L1 :

Regulation No 1346/2000 [300R1346]-A17 N 60 - 68

Regulation No 1346/2000 [300R1346]-A26 N 61 - 68

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Regulation No 1346/2000 [300R1346]-A29 N 57

Regulation No 1346/2000 [300R1346]-A38 N 56 57

Regulation No 1346/2000 [300R1346]-NA N 47 54

Regulation No 1346/2000 [300R1346]-NC N 47 54 - 57

Agreement [468A0927(01)] N 40

Agreement [468A0927(01)]-A27PT1 N 62 - 64

Case C-185/95 [695J0185] N 65

Case C-7/98 [698J0007] N 62 63 65

Case C-174/98 [698J0174] N 65

Case C-189/98 [698J0189] N 65

Case C-116/02 [602J0116] N 40

Case C-159/02 [602J0159] N 40

**Acts cited in ruling**

Interprets Regulation No 1346/2000 [300R1346] -A03P1

Interprets Regulation No 1346/2000 [300R1346] -A16P1L1

Interprets Regulation No 1346/2000 [300R1346] -A26

Interprets Regulation No 1346/2000 [300R1346] -NA

Interprets Regulation No 1346/2000 [300R1346] -NC

Bibliographic Information

**Authoring institution**

Court of Justice

**Basic treaty**

European Economic Community

**Legal instrument**

Judgment

ECJ

**Document type**

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 15

Judgment

**Type of procedure**

Reference for a preliminary ruling

**Authentic language**

English
Eurofood IFSC

**Plaintiff**
Eurofood IFSC Ltd

**Observations**

Ireland

CZ

Federal Republic of Germany

France

Italy

HU

Austria

Finland

Member States

Commission

Institutions

**Judge**

Jann

**Advocate-General**

Jacobs

**National Court**

*A9* Supreme Court (Ireland), judgment of 27/07/2004 (147/2004)

- Zeitschrift fur Wirtschaftsrecht 2004 p.1969-1974

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

- Zeitschrift fur Wirtschaftsrecht 2004 p.1974 (resume)

- Rivista di diritto internazionale privato e processuale 2005 p.209-230

- Int'l Lis 2006/2007 p.15-20

- Herweg, Christian

Tschauner, Heiko: Entscheidungen zum Wirtschaftsrecht 2004 p.973-974

- Pannen, Klaus

Riedemann, Susanne: Entscheidungen zum Wirtschaftsrecht 2005 p.725-726

**Nationality**

Ireland

**Commentary**

Herweg, Christian

Tschauner, Heiko: Entscheidungen zum Wirtschaftsrecht 2004 p.973-974

Pannen, Klaus

Riedemann, Susanne: Entscheidungen zum Wirtschaftsrecht 2005 p.725-726

X: Il Corriere giuridico 2006 p. 11-12

Knof, Bela

Mock, Sebastian: EuInsVO Art. 3, 16 - Zur Anerkennung der Insolvenzeroffnung in einem anderen EU-Mitgliedstaat ('Eurofood'), Zeitschrift fur Wirtschaftsrecht 2006 p.911-915

Espiniella Menendez, Angel: Procedimientos de insolvencia incompatibles en el espacio europeo (Estudio de la sentencia del TJCE de 2 de mayo de 2006, asunto C-341/2004, Eurofood IFSC), Diario La ley 2006 no 6516 p.1-12

Berends, A.J.: Een vennootschap in twee landen failliet verklaard: welk faillissement telt?, Weekblad voor privaatrecht, notariaat en registratie 2006 p.425-426

Saenger, Ingo

Klockenbrink, Ulrich: Anerkennungsfragen im internationalen Insolvenzrecht gelost?, Europaische Zeitschrift fur Wirtschaftsrecht 2006 p.363-367

Wittwer, Alexander: Zustandigkeit, Anerkennung und ordre public im internationalen Insolvenzrecht - ein wegweisendes Urteil, European Law Reporter 2006 p.221-224

Gibbons, Glen

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

O'Riordan, Mark: Eurofood IFSC Limited, The Bar Review 2006 Vol.12 p.111-116

Grier, Elaine: Eurofood IFSC Ltd - An end to forum shopping?, Commercial Law Practitioner 2006 p.161-168

Remery, Jean-Pierre: L'application a une filiale du reglement communautaire relatif aux procedures d'insolvabilite, Revue des societes 2006 p.371-381

Mankowski, Peter: Klarung von Grundfragen des europaischen Internationalen Insolvenzrechts durch die Euro-food-Entscheidung?, Betriebs-Berater 2006 p.1753- 1759

Freitag, Robert

Leible, Stefan: Justizkonflikte im Europaischen Internationalen Insolvenzrecht und (k)ein Ende?, Recht der internationalen Wirtschaft 2006 p.641-651

Lienhard, Alain: Centre des interets principaux d'une filiale etrangere d'un groupe, Recueil Le Dalloz 2006 Act. Jur. 1286-1287

Bachner, Thomas: The Battle over Jurisdiction in European Insolvency Law, European Company and Financial Law Review 2006 Vol.3 no 3 p.310-329

Chaput, Yves: Centre des interets principaux et categories juridiques de l'insolvabilite des entreprises (a propos de l'arret de la CJCE du 2 mai 2006), Revue Lamy droit des affaires 2006 no 6 p.26-32

Dammann, Reinhard: L'application du reglement CE no 1346-2000 apres les arrets Staubitz-Schreiber et Euro-food de la CJCE, Recueil Le Dalloz 2006 Jur. p.1752- 1760

Berends, Andre J.: The Eurofood Case: One Company, Two Main Insolvency Proceedings: Which One is the Real One?, Netherlands International Law Review 2006 p.331-361

Idot, Laurence: Determination de la juridiction competente pour ouvrir la procedure d'insolvabilite principale d'une filiale d'un groupe, Europe 2006 Juillet Comm. no 230 p.31-32

Vallens, Jean-Luc: Le reglement europeen sur les procedures d'insolvabilite a l'epreuve des groupes de societes: l'arbitrage de la CJCE, La Semaine juridique - entreprise et affaires 2006 p.1220-1227

Wittmann, Rita: Internationale Zustandigkeit bei Insolvenz einer Tochtergesellschaft, Ecolex 2006 p.833-834

Declercq, P.J.M.: Forum shopping met de COMI aan banden gelegd?, Nederlands tijdschrift voor Europees recht 2006 p.188-193

Pogaova, Juliana: Rozsudok 'ROZHODOVACIA PRAX SUDNEHO DVORA A SUDU PRVEHO STUPA', Vyber z rozhodnuti Sudneho dvora Europskych spoloenstiev 2006 p.60-82

Komarek, Jan: Upadkove izeni zahajene ve vice lenskych statech ohledn totoneho upadce, Soudni rozhledy : mesicnik ceske, zahranicni a evropske judikatury : nova soudni rozhodnuti vydavana redakci casopisu Pravni rozhledy ve spoluprac jednotlivymi soudci 2006 p.278-279

Sobotkova, Kateina: Upadkove izeni - zasada pednosti a vzajemne dvry, Jurisprudence : specialista na komentovani judikatury 2006 p.66-69

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 18

Richter, Toma: Rozsudek ve vci Eurofood: stedisko hlavnich zajm insolventni obchodni spolenosti, Jurisprudence : specialista na komentovani judikatury 2006 p.40-43

Clottens, Carl: Grensoverschrijdend faillissement van vennootschapsgroepen onder de Insolventieverordening: zo moeder, zo dochter?, Tijdschrift voor rechtspersoon en vennootschap 2006 p.584-591

Baccaglini, Laura: Il caso Eurofood: giurisdizione e litispendenza nell'insolvenza transfrontaliera, Il Corriere giuridico 2006 p.123-129

Kotsiris, L.: Epitheorisis tou Emporikou Dikaiou 2006 p.461-462

Armour, John: European Cross-Border Insolvencies: The Race goes to the Swiftest?, The Cambridge Law Journal 2006 p.505-507

Vriesendorp, R.D.: Ars aequi 2006 p.909-913

Menjucq, Michel: Notion autonome du centre des interets principaux d'une filiale etrangere d'un groupe, La Semaine juridique - edition generale 2006 II 10089 p.1128-1130

Fabries, Eugenie: Droit international et europeen. Groupes de societes et procedure d'insolvabilite, La Semaine juridique - edition generale 2006 I 157 p.1392-1393

Brodec, Jan: Pojem 'evropsky veejny poadek' v judikatue Evropskeho soudniho dvora a Ustavniho soudu R, Jurisprudence : specialista na komentovani judikatury 2006 p.7-13

Amores, Miguel: Jurisprudencia del Tribunal de Justicia de las Comunidades Europeas. Sentencia de 2 de mayo de 2006, Asunto C-341/04, Eurofood IFSC Ltd., Revista Juridica de Catalunya - Jurisprudencia 2006 p.1199-1205

Winkler, Matteo M.: Le procedure concorsuali relative ad imprese multinazionali: la Corte di giustizia si pronuncia sul caso Eurofood, Int'l Lis 2006-07 p.15-20

Vieux, Maud: Revue des affaires europeennes 2006 p.333-340

Bariatti, Stefania: Il regolamento n. 1346/2000 davanti alla Corte di giustizia: il caso Eurofood, Rivista di diritto processuale 2007 p.203-219

Khairallah, Georges: Journal du droit international 2007 p.156-163

Hess, Burkhard

Laukemann, Bjorn

Seagon, Christopher: Europaisches Insolvenzrecht nach Eurofood: Methodische Standortbestimmung und praktische Schlussfolgerungen, Praxis des internationalen Privat- und Verfahrensrechts 2007 p.89-98

Schmidt, Jessica: Eurofood - Eine Leitentscheidung und ihre Rezeption in Europa und den USA, Zeitschrift fur Wirtschaftsrecht 2007 p.405-410

Lafortune, Maurice-Antoine: L'ouverture et la reconnaissance d'une procedure principale d'insolvabilite fondee sur le reglement communautaire du 29 mai 2000, Petites affiches. La Loi / Le Quotidien juridique 2007 no 62

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 19

p.4-6

Adeline, Antoine: Les creanciers en matiere de faillite internationale: information/declaration de creances/ recouvrement (Quelques enseignements des affaires Isa-Daisytek et Rover), Petites affiches. La Loi / Le Quotidien juridique 2007 no 52 p.9-15

Sala, Jaroslav: K nkterym otazkam evropskeho insolvenniho prava - nad rozhodnutim ESD ve vci Eurofood (Parmalat), Pravni rozhledy : casopis pro vsechna pravni odvetvi 2007 p.209-213

Duursma-Kepplinger, Henriette-C.: Aktuelle Entwicklungen zur internationalen Zustandigkeit fur Hauptinsolvenzverfahren - Erkenntnisse aus Staubitz-Schreiber und Eurofood, Zeitschrift fur Wirtschaftsrecht 2007 p.896-903

Fumagalli, Luigi: Apertura della procedura principale, competenza giurisdizionale e riconoscimento della decisione, Giurisprudenza commerciale 2007 p.324-338

Garcia Gutierrez, Laura: Eurofood IFSC Ltd: una nueva decision del Tribunal de Justicia de las Comunidades Europeas en torno al Reglamento 1346/2000 sobre procedimientos de insolvencia, Revista de Derecho Comunitario Europeo 2007 p.125-143

**Publication reference**

European Court reports 2006 Page I-03813

Text outline

ISSUE 1

GROUNDS

... Para 1

... Para 2

... Para 3

... Para 4

... Para 5

... Para 6

... Para 7

... Para 8

... Para 9

... Para 10

... Para 11

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

Page 20

... Para 12

... Para 13

... Para 14

... Para 15

... Para 16

... Para 17

... Para 18

... Para 19

... Para 20

... Para 21

... Para 22

... Para 23

... Para 24

... Para 25

... Para 26

... Para 27

... Para 28

... Para 29

... Para 30

... Para 31

... Para 32

... Para 33

... Para 34

... Para 35

... Para 36

... Para 37

... Para 38

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

... Para 39

... Para 40

... Para 41

... Para 42

... Para 43

... Para 44

... Para 45

... Para 46

... Para 47

... Para 48

... Para 49

... Para 50

... Para 51

... Para 52

... Para 53

... Para 54

... Para 55

... Para 56

... Para 57

... Para 58

... Para 59

... Para 60

... Para 61

... Para 62

... Para 63

... Para 64

... Para 65

Copr. © West 2007 No Claim to Orig. Govt. Works

[2006] ECR I-3813
EU: Case C-341/04
Celex No. 604J0341

... Para 66

... Para 67

... Para 68

... Para 69

RULING

... Para 1

... Para 2

... Para 3

... Para 4

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works

# TAB NO. 3

**Court of Appeal of Versailles 4 September 2003– 03/05038 – COMI and possible measures arising from a lack of proper notice to those running the Company when the administration order was obtained [ISA Daisytek SAS]**

COURT OF APPEAL
OF
VERSAILLES

*Extract of the minutes of the Clerk of the Court of Appeal of Versailles*

24th Section

THE REPUBLIC OF FRANCE
IN THE NAME OF THE PEOPLE OF FRANCE

Judgment n° 12

of 4th September 2003

Case filed under n° 03/05038

**ON THIS FOURTH DAY OF SEPTEMBER TWO THOUSAND AND THREE**
The Court of Appeal of Versailles, 24th District
Handed down the following judgment in an open-court session
The case having been heard on 13 August 2003
The court personnel at this hearing was:

Mr. Jean BESSE, President
Ms. Christine PERRIN, Judge
Mr. Jean-Michel HAYAT, Judge

Assisted by Ms. Hélène FOUGERAT, Clerk

The judges deliberated in accordance with the law

pursuant to an amending Order of the President of this Court of 23 June 2003 taken by virtue of articles R. 213-2, R. 213-8 of the Code of Judicial Organisation and 965 of the Code of Civil Procedure for the holiday period.

**IN THE MATTER**

**Mr. Edward KEMPKA**
Acting in is capacity as Administrator of the company ISA DAISYTEK SAS
Residing 9 Bond Court, Leeds, LS1 2JN (England)

The firm of Lissarrague Dupuis Boccon-Gibod, filed written pleadings
Mr. Antoine Adeline, Member of the Paris Bar delivered oral arguments

www.cimejes.com

**Mr. Stephen TAYLOR**
Acting in his capacity as Administrator of the company ISA DAISYTEK SAS
Residing 9 Bond Court, Leeds, LS1 2JN (England)

The firm of Lissarrague Dupuis Boccon-Gibod, filed written pleadings
Mr. Antoine Adeline, Member of the Paris Bar delivered oral arguments

**Mr. Ian GREEN**
Acting in his capacity as Administrator of the company ISA DAISYTEK SAS
Residing 9 Bond Court, Leeds, LS1 2JN (England)

The firm of Lissarrague Dupuis Boccon-Gibod, filed written pleadings
Mr. Antoine Adeline, Member of the Paris Bar delivered oral arguments

## APPELANTS

*Versus*

**ISA DAISYTEK SA**
14, rue du Petit Albi
95800 CERGY SAINT CHRISTOPHE

Served through its legal counsel domiciled for purposes of receiving process at said
registered office.

**Maître Daniel VALDAM**
Acting in his capacity as Administrator of ISA DAISYTEK SAS

Residing 69, rue Saint Martin, 95300 PONTOISE, France

The firm of Jupin & Algrin, filed written pleadings
Mr. Philippe Saigne, Member of the Paris Bar delivered oral arguments

**Maître Yannick Mandin**
Acting in his capacity as Creditors' Representative in the Administration
of ISA DAISYTEK SAS

Residing 23 rue Victor Hugo, 95304 PONTOISE Cedex, France

The firm of Jupin & Algrin, filed written pleadings
Mr. Frank Maisant, Member of the Paris Bar delivered oral arguments

**In the presence of Mr. SCHOON, Public Prosecutor**

## RESPONDENTS

## STATEMENT OF FACTS AND PROCEEDINGS

The Court is seized of an appeal lodged by Mr. KLEMPKA, Mr. TAYLOR and Mr. GREEN, acting in their capacity as Administrators (hereafter referred to as the "Administrators") against a judgment handed down on 1st July 2003 by the Commercial Court of Pontoise which rejected their application to have the judgment of the same Court of 26 May 2003 set aside.

By "Administration Order" n° 873 of 2003, dated 16 May 2003, the High Court (District Registry of Leeds) opened insolvency proceedings against SAS ISA DAISYTEK, a company incorporated under the laws of France, having its registered office within the jurisdiction of the Commercial Court of Pontoise. Mr. KLEMPKA, Mr. Taylor and Mr. Green were appointed Administrators in these proceedings.

By judgment handed down on 26 May 2003, following a filing of a petition for insolvency, the Commercial Court of Pontoise put SAS ISA DAISYTEK into Administration[1] and appointed Maître VALDMAN as Administrator and Maître Mandin as the representative of creditors.

Considering the insolvency proceedings opened in the United Kingdom prevented the opening of other insolvency proceedings in France, the Administrators appointed by the High Court of Leeds, applied to have the judgment of the Commercial Court of Pontoise of 26 May 2003 set aside.

**By judgment handed down on 1st July 2003**, the Commercial Court of Pontoise dismissed the application of the Administrators to have the judgment of 26 May 2003 set aside and ordered the Administrators to pay Maître Valdam, acting in his capacity as Administrator, the sum of 5.000? as legal costs pursuant to article 700 of the Code of Civil Procedure.

In order to rule as it did, the Commercial Court of Pontoise considered that if the opening of insolvency proceedings in one Member State prevented other insolvency proceedings to be opened in another Member State, this was subject to the caveat that the first proceedings had to be opened in accordance with the conditions laid down by EC Regulation n° 1346/2000 of 29 May 2000. The Court considered that this had not been the case.

In order to rule that the High Court of Leeds had not followed the Regulation by opening insolvency proceedings against SAS ISA DAISYTEK, the Commercial Court of Pontoise underlined the following:

- SAS ISA DAISYTEK was a subsidiary of DAISYTEK-ISA Limited, the latter being incorporated under the laws of England and Wales, having its registered office within the jurisdiction of the High Court of Leeds. The latter Court rendered, on 16 May 2003, fourteen Administration Orders against the parent company and its thirteen subsidiaries, including SAS ISA DAISYTEK.

- the fact that SAS ISA DAISYTEK was the subsidiary of the English company DAISYTEK-ISA Limited, the registered office of which was located within the jurisdiction of the High Court of Leeds, did not give jurisdiction to the latter to open insolvency proceedings against the French company, in so far as the notion of "group" had no legal standing, and that each company of the group had an independent corporate existence of its own.

- that the decision of the Court amounted to denying the separate legal existence of companies and could not lead to the application of the European Regulation.

- that the High Court of Leeds could not rely on the fact that SAS ISA DAISYTEK had an establishment within its jurisdiction because an establishment was not a separate corporation; according to the European Regulation the presence of an establishment within the territory of a Member State only permits the opening of a secondary insolvency proceedings.

---

[1] „redressement judiciaire".

The Administrators applied to have the Judgment rendered on 1st July 2003
by the Commercial Court of Pontoise set aside; before this Court, they argue:

- that the judgment rendered on 1st July 2003 before the Commercial Court
  of Pontoise should be overturned;
- consequently, this Court should either annul or set aside the judgment
  rendered on 26 May 2003;

- as a result, this Court should hold that no insolvency proceedings can
  be opened against SAS ISA DAISYTEK by the Commercial Court of Pontoise, hold
  therefore that the insolvency office-holders appointed pursuant to the Judgment of 26 may
  2003 have no standing to act vis-à-vis SAS ISA DAISYTEK and to hold that only Messrs.
  Edward KLEMPKA, Stephen TAYLOR and Ian GREEN are lawful Administrators of SAS
  ISA DAISYTEK pursuant to the terms of the administration order of the High Court
  of Leeds on 16 May 2003;

- to order Maître VALDMAN, in his capacity as Administrator, to pay them
  the sum of 10.000 ? as legal costs pursuant to article 700 of the New Code of Civil
  Procedure.

The Public Prosecutor asks this Court to confirm the Judgment handed down on 1ˢᵗ July 2003 by
the Commercial Court of Pontoise.

The Public Prosecutor underlines that article 16 of European Regulation of 29 May 2003 lays
down that any decision opening insolvency proceedings in one Member State should be
recognised in all other Member States but points out that this decision should have been taken by
a Court **having jurisdiction pursuant to article 3**. He believes that this was not the case in this
matter for the following reasons:

- the European Regulation does not regulate groups of companies and only applies in
  relation to the registered office and establishments of the debtor, not its subsidiaries;

- according to the guidance notes issued by the French Ministry of Justice ("circulaire") on 17
  March 2003, an establishment, as defined by article 2 -h of the Regulation, is not a subsidiary with
  separate corporate personality.

Maître VALDMAN, acting in his capacity as administrator, argues that this Court should confirm
the Judgment handed down on 1st July 2003 by the Commercial Court
of Pontoise and order the Administrators jointly to pay him 15.000 ? as legal costs pursuant to
article 700 of the New Code of Civil Procedure.

Maître MANDIN, in his capacity as representative of the creditors, explains that considering his
residual mission of verifying the debts pursuant to the continuation plan which was approved by
the Court pursuant to the Judgment of 16 July 2003, he will
abide by any decision this Court may render.

SAS ISA DAISYTEK was duly summoned to appear before this Court but did not do so.

## DISCUSSION

On the nature of main insolvency proceedings

Whereas, for the sake of clarity of the arguments before this Court, it should be underlined that
both set of insolvency proceedings (opened by the High Court of Leeds on 16 May 2003 on the
one hand and the Commercial Court of Pontoise on 26 May 2003 on the other hand) are to be

considered as main insolvency proceedings pursuant to article 3(1) of the Regulation and that the notion of secondary proceedings is not relevant to this dispute;

Whereas this Court has to rule which set of proceedings are the main insolvency proceedings of SAS ISA DAISYTEK;

On jurisdiction

Whereas paragraphs 1 and 2 of article 3 of the Regulation (EC) n° 1346/2000 of the Council of 29 May 2000 relating to insolvency proceedings are drafted as follows:

*"Article 3 : International jurisdiction*

1.    *The courts of the Member State within the territory of which the centre of a debtor's main interests is situated shall have jurisdiction to open insolvency proceedings. In the case of a company or legal person, the place of the registered office shall be presumed to be the centre of its main interests in the absence of proof to the contrary.*
2.    *Where the centre of a debtor's main interests is situated within the territory of a Member State, the courts of another Member State shall have jurisdiction to open insolvency proceedings against that debtor only if he possesses an establishment within the territory of that other Member State. The effects of those proceedings shall be restricted to the assets of the debtor situated in the territory of the latter Member State".*

Whereas, it results from this article that :

-    the Court having jurisdiction to open the main insolvency proceedings is that within the jurisdiction of which the company's **centre of main interests** is located;

-    any other Court does not have such jurisdiction;

-    for companies, the centre of main interests is presumed to be the place of the registered office;

-    when the place of the registered office is not the centre of main interests of the company, the Court having jurisdiction is not that within the jurisdiction of which the registered office of a company is located, but that within the jurisdiction of which the company has its main interests, bearing in mind that the latter Court must ensure, on the evidence available, that this is indeed the case;

Whereas, in other words, the only test, as far as jurisdiction to open main insolvency proceedings is concerned, is the centre of main interests of the company;

Whereas the notion of establishment is only relevant for the opening of secondary proceedings (of article 3(2)) and therefore not relevant for the purposes of this dispute as held above;

Whereas, as the Commercial Court of Pontoise has ruled and as recognised by all the parties to these proceedings, the notions of group of companies or subsidiaries are not relevant as far as jurisdiction is concerned;

On the test applied by the High Court of Leeds for jurisdiction purposes

Whereas the High Court of Leeds has handed down 16 different decisions on 16 May 2003, bearing numbers 861 to 876 of 2003, pursuant to which the Court has suspended the opening of insolvency proceedings for two companies ("Hundleby" and "Source") and pursuant to which it opened the main insolvency proceedings of 14 companies, including SAS ISA DAISYTEK (pursuant to administration order n° 873 of 2003);

Whereas each such "administration order" was made for the reasons set out in the Judgment handed down the same day by Judge McGonigal.

Whereas it clearly results from this Judgment that :
- the Judge considered that the necessary conditions to open insolvency proceedings vis-à-vis the 14 companies were met; the Judge considered that he could also open insolvency proceedings vis-à-vis the three German companies and the French company provided that "the English Court did have jurisdiction".

- the Judge underlined that the English Court did have jurisdiction if the "centre of the main interests" of the German and French companies was located in England or in Wales.

- the Judge considered that the applicants had to adduce sufficient evidence to show that centre of the main interests of the company was in England in order to rebut the presumption that the such centre was located at the place of the registered office;

- the Judge pointed out to significant acts having been executed in Bradford for the German companies, and then set out the criteria which, in law, should apply to determine the centre of main interests; he concluded that this centre was indeed located in Bradford, England;

- the Judge underlined, as far as the French company SAS ISA DAISYTEK was concerned, that the Bradford office did operate with SAS ISA DAISYTEK in the same way as it did with the German companies and concluded that "Bradford is the centre of main interests of the French company";

Whereas it results from the above that the High Court of Leeds declared that it did have jurisdiction over SAS ISA DAISKYTEK to open insolvency proceedings by way of an administration order of 16 May 2003, considering that the centre of main interests of this company was located in Bradford, England.

Whereas it is therefore untrue to argue that the High Court of Leeds took into consideration the notions of establishment, group of companies or subsidiary;

<u>On the consequences as a matter of principle, in France, of the prior opening of main insolvency proceedings in England, reserving the questions of procedure</u>

Whereas it results from article 16 of the Regulation that any judgment opening insolvency proceedings handed down by a court of a Member State which has jurisdiction pursuant to Article 3 shall be recognised in all the other Member States;

Whereas, as indicated above, the High Court of Leeds ruled that it did have sufficient jurisdiction to open insolvency proceedings considering sufficient had been adduced before it to the effect that the centre of main interests of SAS ISA DAISYTEK was located in Bradford, England.

Whereas the High Court of Leeds therefore appears to have had jurisdiction over SAS ISA DAISYTEK to open insolvency proceedings pursuant to article 3(1) of the Regulation; as a consequence, the administration order relating to SAS ISA DAISYTEK of 16 May 2003 must be recognised in France.

Whereas it results from article 17 of the Regulation that this "administration order" produces, with no further formalities, the same effects in France as under English law;

Whereas one should conclude from these provisions that the opening of the main insolvency proceedings of SAS ISA DAISYTEK by the High Court of Leeds prevented any French Court

opening a subsequent main insolvency p roceedings ; the Commercial Court of Pontoise therefore had no jurisdiction to put this company into Administration[2];

Whereas it was thus in violation of European Regulation 1346/2000 of 29 May 2000 that the Commercial Court of Pontoise opened Administration proceedings[3] against SAS ISA DAISYTEK and appointed insolvency office-holders in the context of these proceedings.

On procedural requirements

Whereas, in order to dispute the effects of the administration order handed down on 16 May 2003 by the High Court of Leeds, Maître VALDMAN, acting in his capacity as administrator, raises a number of procedural arguments, including:

-    the Administration Order of 16 May 2003 was not subject to any notice at the Corporate Registry ("greffe") of the Commercial Court of Pontoise, and no application was made to register such order with the Registry;

-    the Administration Order was made without SAS ISA DAISYTEK being given notice of the proceedings and thus without having been informed of the possibility of the opening of insolvency proceedings sufficiently in advance to lodge a valid defence and without any meeting of the labour management committee of the French company; these procedural irregularities amounted to violations of article 6 of the European Convention on Human Rights;

-    the enforcement of such decision, rendered in violation of a right to a fair trial, would be contrary to French public policy[4] and should therefore be denied, pursuant to article 26 of the Regulation;

Whereas the Administrators, in response to the above arguments, argue that:

-    the Commercial Court of Pontoise was perfectly aware of the existence of the insolvency proceedings opened in England, as this decision is referred to in its Judgment of 26 May 2003;

-    they applied to the Corporate Registry of the Commercial Court of Pontoise to have the administration order published, pursuant to article 22 of the Regulation but that this was refused by the Corporate Registry;

-    that the administration order produces its effects in all Member States, without any formality; therefore, even if the decision was not publicized according to the laws of these States;

-    that the production of a free translation of the administration order suffices to demonstrate the existence of such decision and of its applicability, without the need to adduce a sworn translation or any "affidavit";

-    that SAS ISA DAISYTEK sought from the English Court the opening of insolvency proceedings against it; the latter can therefore not claim that a right to a fair trial was in any way violated because it had not been duly served in the English proceedings;

---

[2] "redressement judiciaire".

[3]  "redressement judiciaire".
[4]  „ordre public"

Whereas it transpires from the administration order and from the judgment of Judge McGonigal handed down on 16 May 2003 that it was upon the application of SAS IS A DAISYTEK, represented by its officer, that the main insolvency proceedings were opened; consequently the proceedings were opened without violation of the right to a fair trial even if SAS ISA DAISYTEK was not, in fact, a party duly served in the English proceedings;

Whereas, if French law requires a Judgment opening insolvency proceedings to be published at the relevant Corporate Registry, the absence of such publication is of no consequence to the fact that this Judgment did prevent the French Court from opening, at a later stage, main insolvency proceedings; indeed article 17 of the Regulation provides that the judgment opening the proceedings produces its effects "without further formality";

Whereas it results from these provisions that there is no need to produce an "affidavit" nor to obtain the recognition and enforcement of the foreign decision, this very last point not being, in fact, contested by the parties.

Whereas, with respect to the absence of notice to the representatives of the labour management committee, the Court observes that the French administrator has no standing to invoke this argument and that this irregularity can only be invoked through an application to review the administration order; it has no consequence on the effects of the administration order in France;

Whereas the proof the existence of the administration order is sufficiently adduced by the production of a certified copy; a sworn translation is also produced into evidence;

Whereas it is not contested that the disputed administration order is applicable in the United Kingdom and that the legal formalities attached thereto were duly complied with;

Whereas it results from the above that none of the procedural arguments raised by Maître VALDMAN, in his capacity as administrator, are capable of defeating the application of the administration order in France and that, therefore, this decision could not possibly have effects which would be contrary to French public policy[5];

<u>On the effects of the administration order of the High Court of Leeds dated 16 May 2003</u>

Whereas it has been indicated above, subject to the procedural arguments, that the effect of administration order of the High Court of Leeds was to preclude the opening of later administration[6] proceedings against SAS ISA DAISYTEK by the Commercial Court of Pontoise.

Whereas the procedural arguments raised by Maître VALDMAN, in his capacity as administrator, have been dismissed;

Whereas it is therefore in violation of the provisions of the European Regulation of 29 May 2000 that the Commercial Court of Pontoise opened administration[7] proceedings against SAS ISA DAISYTEK by judgment of 26 May 2003;

Whereas the application by the Administrators to have the said judgment set aside is therefore well grounded; the judgment handed down by the Commercial Court of Pontoise on 1st July 2003 must therefore be overturned as well as the judgment handed down on 26 May 2003;

Whereas it results from the combined provisions of articles 584 and 591 of the New Code of Civil Procedure that in a case of indivisibility vis-à-vis several parties to the judgment appealed, the

---

[5] „ordre public"
[6] „redressement judiciaire"
[7] „redressement judiciaire"

binding nature of the outcome of the application to set aside the judgment will concern all the parties called to be heard on this application;

Whereas the effects of the judgment the opening the insolvency proceedings are indivisible; therefore, the setting aside of the judgment of 26 May 2003 will be binding not only vis-à-vis the Administrators, the applicants, but also vis-à-vis SAS ISA DAISYTEK, Maître VALDMAN, in his capacity as administrator, and Maître MANDIN, in his capacity as representative of the creditors;

On the other claims

Whereas it would not be unfair to let the parties bear their own counsels' costs;

Whereas Maître Valdman and Maître Mandin, acting both in their respective capacities, have lost before this Court; they will therefore have to pay jointly the Courts' costs of first instance and appeal;

**ON THESE GROUNDS**

The Court, handing down its ruling in an open-court hearing, with all parties represented, against which no further appeal lies,

Overturns the judgment rendered on 1st July 2003 by the Commercial Court of Pontoise,

Declares that the application presented by Messrs. KLEMPKA, TAYLOR and GREEN, acting in their capacity as Administrators, to have the judgment of the Commercial Court of Pontoise handed down on 26 May 2003 is well grounded,

Consequently, rules that no administration[8] proceedings can be opened against SAS ISA DAISYTEK in France, overturns the judgment handed down on 26 May 2003 by the Commercial Court of Pontoise, and rules that this result will be binding against the appellants, SAS ISA DAISYTEK, Maître VALDMAN and Maître MANDIN, both acting in their respective capacities,

Dismisses the claims made for counsels' costs pursuant to article 700 of the New Code of Civil Procedure,

Orders Maître VALDMAN and Maître MANDIN jointly to pay the Courts' costs of first instance and appeal and allows SCP LISSARRAGUE, DUPUIS, BOCCONGIBOD the right to recover the said costs pursuant to article 699 of the New Code of Civil Procedure.

This judgment was signed by:

Monsieur Jean BESSE, who handed down the ruling,
Madame Agnès ANGELVY, who was present when the ruling was handed down,


The CLERK                                        The PRESIDING JUDGE

(signature)                                      (signature)

---

[8] „redressement judiciaire".

*Consequently, the FRENCH REPUBLIC mandates and orders to all process servers, upon this request, to enforce this Judgment; to all public prosecutors and attorneys general with the district courts to lend their assistance; to all law enforcement officials to enforce this judgment when legally required to dos so.*

**BY THE COURT**

**(signature)**

**(stamp of the Court of Appeal of Versailles)**

*Translation by Michaël Haravon, LL.B. (London), B.C.L. (Oxon), DPSI (IoL)*
*Avocat à la Cour, Barrister of Gray's Inn, Denton Wilde Sapte, Paris*
*Member of the Institute of Linguists, London.*